479 A.2d 1047

**Joseph P. SEMASEK**

v.

**Theresa A. SEMASEK, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 15, 1984.

Filed July 20, 1984.

Petition for Allowance of Appeal Granted Nov. 28, 1984.

1

2

4

Clayton T. Hyman, Allentown, for appellant.

Anthony J. Urban, Assistant Public Defender, Mahanoy City, for appellee.

Before SPAETH, President Judge, and CAVANAUGH and CIRILLO, JJ.

CIRILLO, Judge:

This is an appeal from an order of the Court of Common Pleas of Schuylkill County, entered June 7, 1982, awarding rehabilitative alimony and the partial payment of counsel fees to appellant and granting the equitable distribution of all marital property between the parties. The court dismissed the appellant's application for alimony pendente lite. The appellant Theresa A. Semasek requests either modification or remanding of the order, claiming that the hearing court abused its discretion in its findings. We disagree with the appellant's position and affirm the order of the hearing court.

6

On August 5, 1980, the appellee Joseph P. Semasek instituted an action under the New Divorce Code,[1] alleging that his marriage was irretrievably broken and that he and his wife had lived separate and apart for a period exceeding three years. The appellant filed an answer and a counterclaim seeking child support, custody,[2] counsel fees, alimony, alimony pendente lite and equitable distribution of marital property.

The matter was assigned to a master, who, after having conducted extensive hearings, recommended that a divorce be granted. The master filed a supplemental report addressing the economic issues.

On May 5, 1981, the divorce decree was entered, to which there was no appeal. Both parties, however, filed exceptions to the additional report of the master. The court subsequently reviewed the record, and on June 7, 1982, the Honorable James E. Lavelle issued an order, equitably distributing marital property and awarding alimony. Marital property was distributed by allocating 56 percent to the appellee and 44 percent to the appellant. The court awarded alimony to the appellant in an amount equal to any money expended by her for education, not to exceed $2,750 annually for three years. Additionally, the appellee was directed to pay one half of the appellant's counsel and expert witness fees. The court dismissed the appellant's application for alimony pendente lite. This appeal followed.

■ In determining the propriety of property distribution and of alimony, we use the abuse of discretion standard of review. *Ruth v. Ruth,* 316 Pa.Super. 282, 462 A.2d 1351 (1983); *Remick v. Remick,* 310 Pa.Super. 23, 456 A.2d 163 (1983). Under this standard, we do not usurp the hearing court's duty as fact finder. Rather we apply the legislative guidelines of the Divorce Code to the record to determine whether or not the hearing court has abused its discretion.

1. Act of April 2, 1980, P.L. 63, No. 26, § 201; 23 P.S. § 201(d).

2. At the time the order was entered, both children born of the marriage were emancipated adults. Therefore, the issues of child custody and support are moot.

The appellant's first contention on appeal is that the court erred in classifying three diamond rings given to her by her husband during the marriage as marital property to be equitably distributed. The appellant asserts that such property falls within the "gift" exception of the Divorce Code. We disagree.

Section 401(e) defines marital property as "all property acquired by either party during the marriage". The "gift" exception excludes:

Property acquired by gift, bequest, devise or descent except for the increase in value during the marriage.

The hearing court, in the instant matter, determined that the jewelry was not a "gift" within the meaning of the statute as intended by the legislature.

In reviewing these provisions, we note that the hearing court should evaluate the facts of the case, giving consideration to the source of funds with which the gift was purchased, the intent of the donor as to the use of the property, the status of the marriage at the time of the transfer, and any agreements regarding the exclusion of the item from marital property. *See O'Neill v. O'Neill*, 600 S.W.2d 493 (Ky.App.1980). In this case, the hearing court found that the jewelry had been purchased by the appellee with money from his salary, which is certainly a marital asset. When the money was exchanged for the purchased items, the marital property assumed a different form, but remained marital property to be included in equitable distribution. This reasoning in classifying the jewelry as marital property does not constitute an abuse of discretion, and will not be disturbed on appeal.

The appellant next contends that several factual findings, specifically the valuation of the appellant's diamond rings and of two parcels of realty, were arbitrary and unsupported by the record. The appellant additionally asserts that the court made conflicting findings as to her banking transactions and an erroneous finding that the appellant still holds assets in excess of $75,000 which she appropriated in 1979.

8

■ Section 401(d)(8) of the Divorce Code requires that the court consider the value of property set apart to each party in making a determination as to equitable distribution. Since there is no specific method of valuing assets, the court must exercise its discretion, relying upon the estimates and inventories submitted by both parties, records of purchase prices, and appraisals. From evaluating this evidence, the court makes its findings of fact. *Gee v. Gee*, 314 Pa.Super. 31, 460 A.2d 358 (1983). *See Jost v. Jost*, 89 Wis.2d 533, 279 N.W.2d 202 (1979).

■ The appellant submitted her diamond rings to the master, indicating that she would accept $35,000 credit in exchange for returning the rings to the appellee. The appellee testified that the purchase price of the rings was $35,000. Both parties agreed to an appraisal to be arranged by the master, who discovered that the rings were costume jewelry. Upon close examination of the jewelry, the appellee asserted that the rings held by the master were not the ones he had purchased. In resolving this issue that had become one of credibility, the master made a specific finding that this jewelry had a value of $15,000 based upon an estimate of carat worth. Thereafter, this finding was accepted by the hearing court.

■ Similarly, the court placed values upon real property of the parties by considering testimony, records of purchase prices and, in some instances, expert appraisal reports. These valuations amply supported by the record will not be disturbed on appeal.

■ As to appellant's banking transactions, we find that the hearing court scrutinized the numerous bank statements to ascertain as accurately as possible the funds remaining in the accounts. Since the appellant herself conducted these transactions, any conflicts in the court's findings spring from her failure to fully disclose all necessary information. Further, the appellant's allegation that the court should not have considered the funds appropriated by her from joint accounts is without merit. The intentional

dissipation of marital assets by one party does not preclude its status as marital property in equitable distribution. It is the duty of the court to "issue other orders which are necessary to protect the interest of the parties and may grant such other relief or remedy as equity and justice require ..." 23 P.S. § 401(c). It is undisputed that the appellant appropriated funds of over $75,000 from the joint banks accounts. Since these funds are marital property to be equitably distributed, the court is warranted in having included them as such in its calculations.

The appellant additionally contends that the division of marital property is inequitable. Guidelines for the equitable distribution of marital property are set forth in Section 401(d) of the New Divorce Code which provides:

In a proceeding for divorce or annulment, the court shall, upon request of either party, equitably divide, distribute or assign the marital property between the parties without regard to marital misconduct in such proportions as the court deems just after considering all relevant factors including:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training, or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including but not limited to medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

As the record indicates, the hearing court found that the parties were married for eighteen years and that neither had been previously married. Two boys born of the marriage are each over eighteen years and are not pursuing higher education.

At the time of the hearing, the appellant was 44 years of age and in good health. The appellant, a high school graduate, had been employed as a bookkeeper and clerk until 1960, at which time she forfeited her employment to become a housewife, mother, and homemaker. In doing so, the appellant made substantial non-monetary contributions to the marriage and to the purchase and accumulation of jointly held assets. She also assisted in a secretarial and clerical capacity in her husband's law practice, which attests to her employability and future earning potential.

■ The appellee, 45 years of age, is a self-employed attorney in private practice, a part-time member of the Schuylkill County Public Defender's Office and the operator of a private detective agency. His gross earnings from his practice have declined from $53,525.76 in 1977 to $37,314.84 in 1980.[3]

The appellee obtained his law degree from the University of Maryland prior to his marriage, but was required to return one year to complete his Bachelor's Degree to qualify for admission into the Pennsylvania Bar. During that year, both parties were employed.

3. The court notes that this decline is resultant from the appellant's deliberate interference with the law practice. The appellant contends that this misconduct is inappropriately stated within the opinion under the equitable distribution heading, citing *Gordon v. Gordon,* 293 Pa.Super. 491, 439 A.2d 683 (1981), *aff'd,* 498 Pa. 570, 449 A.2d 1378 (1982). We find its inclusion to be informational to account for the decline in appellee's salary and to indicate the intentional dissipation of marital property by the appellant as set forth in Section 401(d)(7).

In reviewing the record as found by the hearing court in light of the provisions of the Divorce Code, we find that the distribution of marital property was indeed equitable. The hearing court painstakingly applied the relevant factors enumerated in section 401(d) to the facts at hand, ultimately granting 56 percent of the property to the appellee and 44 percent to the appellant.

We note that there is no simple formula by which to divide marital property. The method of distribution derives from the facts of the individual case. The list of factors of 401(d) serves as a guideline for consideration, although the list is neither exhaustive nor specific as to the weight to be given the various factors. Thus, the court has flexibility of method and concomitantly assumes responsibility in rendering its decisions. The concept of equitable distribution is not an equal division of marital property.[4] In *Platek v. Platek,* this court stated:

[T]he essence of the concept of an equitable division is that "after considering all relevant factors" the court may "deem just" a division that awards one of the parties more than half, perhaps the lion's share of the property.

309 Pa.Super. 16, 454 A.2d 1059 (1982).

Accordingly, the order of equitable distribution in this case is not an abuse of discretion.

The appellant also alleges that the hearing court abused its discretion in framing its award for rehabilitative alimony, basing its decision upon dissipated assets and failing to consider the factors enumerated in Section 501(b) of the Divorce Code. We disagree with this contention.

In determining whether an award of alimony is to be granted, the hearing court must apply the facts of the case to the threshold requirements set forth in section 501(a):

(a) The court may allow alimony, as it deems reasonable, to either party, only if it finds that the party seeking alimony:

**4.** Hearings before the Pennsylvania House of Representatives 1979 Pa.Leg.J. 1959–1960.

(1) lacks sufficient property, including but not limited to any property distributed pursuant to Chapter 4, to provide for his or her reasonable needs; and

(2) is unable to support himself or herself through appropriate employment.

Subsection (b) provides guidelines by which the court may determine along with any other relevant considerations, the necessity, nature, amount, duration, and manner of payment of alimony. The relevant factors are:

(1) The relative earnings and earning capacities of the parties.

(2) The ages, and the physical, mental and emotional conditions of the parties.

(3) The sources of income of both parties including but not limited to medical, retirement, insurance or other benefits.

(4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

(7) The extent to which it would be inappropriate for a party, because said party will be custodian of a minor child, to seek employment outside the home.

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage; however, the marital misconduct of either of the parties during separation subsequent to the

filing of a divorce complaint shall not be considered by the court in its determinations relative to alimony.

To construe this statute so as to effectuate economic justice between the parties, 23 P.S. § 102(a)(6), the hearing court must apply it in a nonmechanical fashion. *Geyer v. Geyer*, 310 Pa.Super. 456, 456 A.2d 1025 (1983). The provisions are to be read in conjunction with each other and with the intent and purposes of the Divorce Act as a whole. *Bickley v. Bickley*, 301 Pa.Super. 396, 447 A.2d 1025 (1982). An award of alimony is not to reward one party and to punish the other, but rather to insure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment are met. While there is a right to alimony in some instances, there is a responsibility on the part of the person requesting and accepting alimony to contribute to his or her own economic well-being. Accordingly, the Divorce Code includes a provision addressing the duration of such an award.

Subsection (c) provides:

(c) Unless the ability of the party seeking the alimony to provide for his or her reasonable needs through employment is substantially diminished by reason of age, physical, mental or emotional condition, custody of minor children, or other compelling impediment to gainful employment, the court in ordering alimony shall limit the duration of the order to a period of time which is reasonable for the purpose of allowing the party seeking alimony to meet his or her reasonable needs by:

(1) obtaining appropriate employment; or

(2) developing an appropriate employable skill.

In light of the aforementioned considerations, it becomes the duty of the hearing court to grant or to deny an award of alimony and to set forth the reasons for having so ruled. 23 P.S. § 501(d).

In the instant matter, the court granted alimony to the appellant limited to educational expenses incurred by her for a period of three years, not to exceed $2750 yearly.

14

The court reasoned that such an award was appropriate in light of the appellant's expressed desire to resume her education, the substantial marital assets in her possession, and her clerical skills and overall employability. Although the court did not numerically proceed through the fourteen factors of 501(b) which the appellant alleged as an abuse of discretion, the court did grant due consideration to those appropriate to the facts. Additionally, the court noted that the appellant failed to submit any plan of training which might have been implemented to assist her in her employment, and that the appellant had neither sought employment nor academic training from the date of separation in 1977. We find that the hearing court did not abuse its discretion in awarding limited alimony, but implemented an award that demonstrates statutory compliance as well as perception of human tendencies.

The appellant further contends that the hearing court should have awarded her alimony pendente lite and full payment of counsel fees. Section 401(b) of the Code provides in pertinent part:

... The court may order alimony, reasonable counsel fees and expenses pending final disposition of the matters provided for in this subsection and upon final disposition, the court may award costs to the party in whose favor the order or decree shall be entered, or may order that each party shall pay his or her own costs, or may order that costs be divided equitably as it shall appear just and reasonable.

The court is, therefore, permitted to make such awards in its discretion, whenever it deems that the awards are necessary for either spouse to maintain or to defend a divorce action. *Remick v. Remick, supra; Hoover v. Hoover,* 288 Pa.Super. 159, 431 A.2d 337 (1981); *Wechsler v. Wechsler,* 242 Pa.Super. 356, 363 A.2d 1307 (1976). The court makes this determination by examining the size of the moving party's estate, the value of counsel's services, and the ability to pay. In situations in which the spouse is financial-

ly independent, the purpose of the award is not served and should not be granted.

In the instant matter, both the master and the hearing court concluded that the appellant's claim for alimony pendente lite was inappropriate. During the period pending the divorce, the appellant had the principal and the income from marital assets in excess of $94,000 and rental income from jointly held properties. The appellee paid the heat, electric, telephone, and taxes on her residence and further contributed $100 weekly. Accordingly, we find that the award of partial counsel fees and the denial of alimony pendente lite do not constitute an abuse of discretion on the part of the hearing court.

For all of the above reasons, we affirm the order of the hearing court.

Order affirmed.

SPAETH, President Judge, filed a dissenting opinion.

SPAETH, President Judge, dissenting:

I am unable to agree with the majority's decision affirming the orders of the trial court. I am of the view that several of appellant's arguments have merit and that the orders of the trial court should be reversed and the case remanded for further proceedings. Specifically, I agree with appellant that interspousal gifts are within the exclusion from marital property for "[p]roperty acquired by gift, bequest, devise or descent except for the increase in value during the marriage," 23 P.S. § 401(e)(3); that with respect to the valuation of several items of marital property, the trial court abused its discretion; and that the trial court erred in purportedly distributing to her marital assets that no longer existed, and further erred in then relying on this purported distribution in determining her entitlement to alimony, counsel fees and costs, and alimony pendente lite.

-1-

The issue regarding interspousal gifts concerns three rings that appellee gave appellant. The majority holds that

whether an interspousal gift comes within the gift exclusion is to be determined by the particular facts of the case, with consideration given to the source of the funds, the intent of the donor, the status of the marriage, and any agreement to exclude the item from marital property. The majority then goes on to hold that the trial court did not abuse its discretion in reasoning that the money used to purchase the three rings came from appellee's salary, which was marital property, and merely changed form when it was used to purchase the rings, which remained marital property. This reasoning does not persuade me.

The statute provides that "[p]roperty acquired by gift" is to be excluded from marital property. 23 P.S. § 401(e)(3). What could be clearer? "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b).[1] See Sorbello v. Sorbello, 21 D. & C.3d 187 (Cumberland Co.1981). Nor is this clarity obscured by any other provision in the statute. To the contrary, it is sharpened. For excluding interspousal gifts from marital property is consistent with the purposes of the statute. Consider in particular Section 401(e)(2), which excludes from marital property "[p]roperty excluded by valid agreement of the parties entered into before, during or after the marriage." A gift from one spouse to another is analogous to an agreement between the parties that the property be excluded from marital property. Under the reasoning of the trial court, which is approved by the majority, interspousal gifts will virtually never come within the gift exclusion because interspousal gifts are virtually always purchased with funds that are marital property. This result is contrary to both the language and the intent of the statute. See In re Marriage of Severns, 93 Ill.App.3d 122, 48 Ill.Dec.

---

1. The principle of *ejusdem generis,* codified at 1 Pa.C.S. § 1903(b), is not applicable to the construction of the term "gift" in Section 401(e)(3) because "gift" is not a general word preceded by more particular words. Moreover, the common element of the terms "gift, bequest, devise or descent" is not the source but the donative nature of the transfer.

713, 416 N.E.2d 1235 (1981) (statutory exclusion for gifts includes interspousal gifts; donee did not meet burden of proving gift by clear and convincing evidence). *Cf. Burgess v. Burgess,* 277 S.C. 283, 286 S.E.2d 142 (1982) (interspousal gift is subject to equitable division where statute provides for settlement of all equitable rights of parties as to all "real and personal property of the marriage").

I should hold that in determining whether an interspousal transfer is a gift, the only relevant issue is the intent of the transferor, which must be determined by consideration of the transferor's expressed intent as well as the circumstances surrounding the transfer. Under Section 401(f) the presumption is that property acquired during the marriage is marital property, with the spouse claiming that the property is excluded able to overcome the presumption by showing that the property was acquired by gift. *Cf. Chambers v. Chambers,* 406 Pa. 50, 176 A.2d 673 (1962) (common law presumption that gift is intended may be overcome by evidence that conveyance was not intended as gift). In this case, there is no dispute that appellee's transfer to appellant of the three rings at issue was intended to be a gift.[2] The rings were personal in nature; they were not designed for use by both spouses, as for example a household appliance might be; and there was no testimony that they were purchased as an investment. *Cf. O'Neill v. O'Neill,* 600 S.W.2d 493 (Ky.App.1980) (husband testified that jewelry was purchased as an investment). Rather, appellee testified that he bought the rings for appellant because "she never got an engagement ring." N.T. February 5, 1981, at 41. Given the undisputed evidence that appellee intended the transfer of the rings to be a gift to appellant, I should hold that appellant has established that the rings are not marital property, except for the increase in value, if any, during the marriage.[3] *Cf. Chambers v. Chambers, supra* (common law presumption that gift is intended when hus-

2. There is also no allegation that the transfer was procured by fraud or undue influence.

3. I recognize that there is some uncertainty regarding the cut-off date for determining the increase in value "during the marriage." In

band purchases or transfers property in name of wife did not arise where undisputed facts regarding the purpose of the transfer negated any presumption of gift).

–2–

Appellant argues that the trial court abused its discretion in valuing three assets that it held were marital property: the three rings just discussed; the Kline Township property; and the Pottsville office.[4] I agree with appellant.

(a)

As I have explained, I believe the trial court erred in holding that the rings were marital property. However, even though the rings should have been excluded from marital property as a gift (except for the increase in value, if any, during the marriage), the issue of their valuation must still be considered. This is so because appellant's possession of the rings is relevant to the issue of what division of the marital property would be equitable, since in equitably distributing the marital property, the court must consider, *inter alia*, the "estate ... of each of the parties," 23 P.S. § 401(d)(3), and "[t]he economic circumstances of each party at the time the division of the property is to become effective," *id.* at § 401(d)(10).

The trial court accepted the master's valuation of $15,000 for the three rings, and awarded the rings to appellant. Appellant argues that the trial court abused its discretion in accepting the master's valuation because there is no support for it in the record.

Appellee testified that over the course of the marriage he purchased three diamond rings for appellant, and that he

Sorbello v. Sorbello, *supra*, the court relied on Section 401(e)(4) in holding that the date of final separation controls. Since neither party has offered any argument on this issue and the trial court did not address it, I should leave it for the trial court to resolve, if necessary, on remand.

4.  The trial court accepted the master's valuation of the rings but made its own valuation of the Kline Township property and the Pottsville office. The master did not attempt to value the real property because the parties had agreed, and the master recommended, that it be sold and the proceeds divided. N.T. August 20, 1981, at 60; Master's Report at 16–24.

estimated the value of the three rings to be $35,000. N.T. February 5, 1981, at 12, 41. Appellant brought three rings to the March 18, 1981, hearing and testified that they were the ones appellee had bought her. N.T. March 18, 1981, at 23. Appellant and appellee then agreed that the master should have the rings appraised. *Id.* at 23–24. During the lunch break, the master received a cursory appraisal from a jeweler, who stated that the rings were costume jewelry. *Id.* at 50. The record does not indicate any agreement by the parties to accept this appraisal in place of a formal appraisal. Later in the day, appellee testified that the rings that appellant had given to the master were not the ones he had given appellant during the marriage. *Id.* at 94, 98. In his report at page 14 the master found that appellant had received from appellee three diamond rings that resembled the rings appellant had submitted, and that the value of the three rings was $15,000 ($8,000 for the multi-carat solitaire ring at $4,000 per carat, $3,000 for the wedding band with diamonds, and $4,000 for another solitaire ring). The master did not explain how he arrived at this valuation. The trial court in its opinion at page 22 states: "We accept the valuation of $15,000 placed upon [the rings] by the Master, since the Court has not had an opportunity to view them."

I agree with appellant that there is no support in the record for this valuation. Apparently, the master determined that the rings that appellee gave to appellant resembled the rings that appellant had brought to the hearing and that the rings actually given did contain diamonds. The master was entitled to make this determination on the basis of an assessment of the parties' credibility. However, nothing in the record supports the valuation placed on the rings by the master. While apparently the master did not find credible appellee's testimony that the rings were worth $35,000, there is no indication of why or how the master arrived at the $15,000 valuation. I should therefore hold that the trial court abused its discretion in accepting the master's valuation. *Cf. F.W. Woolworth Co. Tax Assessment Case,* 426 Pa. 583, 235 A.2d 793 (1967) (court is not an expert appraiser and can act only upon credible and compe-

tent evidence presented to it); *Avins v. Commonwealth,* 379 Pa. 202, 108 A.2d 788 (1954) (court may not disregard evidence as to property values and substitute its own ideas; court's view of property does not qualify it to make its own independent appraisal; purpose of view is to enable trier of fact to comprehend and weigh the testimony).

### (b)

The trial court awarded two parcels of land in Kline Township, totalling 8.8 acres, to appellee. The court valued the property at $10,000, stating in Finding of Fact 56 that the property is subject to sewage and drainage limitations that seriously affect its market value. Appellant argues that the $10,000 valuation is without support in the record.

Appellant introduced into evidence an expert appraisal of the Kline Township property, which valued the property at $29,880 for parcel 1 and $22,920 for parcel 2. Defendant's Exhibit 4. In arriving at this valuation, the appraiser noted in the report that there was currently a ban on new sewer hook-ups and that because of this ban the property could not be subdivided, but the two existing lots would be allowed to hook-up to existing sewer lines. The appraiser concluded that therefore the best use for the property would be two residential building lots. This is the only evidence in the record regarding the valuation of the Kline Township property. Nevertheless, the court rejected this evidence and valued the property at $10,000, without giving any reason why it did not accept the expert appraisal. I should hold that the court abused its discretion. *See F.W. Woolworth Co. Tax Assessment Case, supra* (court cannot refuse to accept expert's estimate of fair market value, when court finds expert to be competent and credible and there was no countervailing testimony); *Avins v. Commonwealth, supra* (court may not disregard evidence as to value and substitute its own idea). *Cf. Gee v. Gee,* 314 Pa.Super. 31, 460 A.2d 358 (1983) (record adequately supports master's estimate of fair market rental value of $300 per month where appraisal report estimate of $200 did not include 132 acres that appellant farmed or $15,000 barn located on farm land).

The trial court awarded the Pottsville office to appellee and valued it at $35,000, Finding of Fact 47. Appellant again argues that this valuation is without support in the record.

Appellant testified that she thought the Pottsville property was worth about $45,000. N.T. March 18, 1981, at 15. Appellee testified as follows:

A. I think it's worth more than $45,000. They say $35,000.

Q. This is your $35,000 for the Pottsville property.

A. I say it's worth more than $45,000.

*Id.* at 96.

The court did not explain how it arrived at the $35,000 valuation. The only reference to $35,000 in the record is the above-quoted reference to some unknown "they." Again, I should hold that the trial court abused its discretion in arriving at a valuation not supported by any competent evidence of record.

I recognize that the master, in the first instance, and the trial court thereafter, may sometimes be put in a difficult position. Under Section 401 the court has the obligation, upon request of either party, to determine what is marital property and to distribute it equitably. Under Section 401(d)(8) the court must consider the value of the property set aside to each party. The court can only do this if there is competent and credible evidence before it upon which to base a valuation. The parties have the primary obligation to present evidence that will enable the court to make a reasonable valuation, including expert appraisals where necessary. *See Lavene v. Lavene,* 148 N.J.Super. 267, 372 A.2d 629 (1977). Nevertheless, when the parties do not meet this obligation, the trial court still has the responsibility to distribute the property equitably. *Cf. Lewis v. Lewis,* 267 Pa.Super. 235, 406 A.2d 781 (1979) (in child custody proceeding each party bears burden of proving that an award of custody to that party would be in the child's best interests; it is the responsibility of the trial court, if necessary, to develop the record itself). In order to fulfill this

responsibility the master or the court should not hesitate to require the parties to present expert appraisals, or, if the parties' proofs are inadequate, to appoint its own expert at the parties' expense. *See Lavene v. Lavene, supra.* So long as the court has fulfilled its responsibility and based its valuation on competent and credible evidence of record, a party who has failed to produce countervailing evidence will not be heard to complain on appeal. *Cf. Dean v. Dean,* 87 Wis.2d 854, 275 N.W.2d 902 (1979) (court did not abuse its discretion in relying on allegedly out of date real estate valuation based on purchase price where appellant failed to produce countervailing expert testimony). But if, as here, the court's valuation is not supported by competent and credible evidence of record, then the order of distribution must be reversed and the case remanded for further proceedings. *Cf. Avins v. Commonwealth, supra* (if after trying to determine the value of property in a condemnation action, the court is unable to come to a conclusion, the proper resolution is to order a new trial).

–3–

Appellant's final argument is that the trial court erred in purportedly distributing to her marital assets that no longer existed; in relying on this purported distribution in determining appellant's entitlement to alimony, counsel fees and costs; and in holding that appellant was not entitled to alimony pendente lite because, *inter alia,* during the pendency of the divorce proceedings she had the use of and income from the assets purportedly distributed to her by the order of equitable distribution.

The trial court made extensive findings of fact regarding appellant's withdrawal of funds from the parties' joint savings accounts from October of 1975 through June of 1977. The court traced the funds through various accounts and found that the total withdrawals amounted to $79,-403.96. Finding of Fact 86. The court also found that when the parties separated in October 1976, appellant withdrew $7,900 in cash and bonds with a face value of $8,000 from the parties' safe deposit box. Finding of Fact 87. The court found that the value of the bonds as of the

beginning of 1981 was approximately $9,600. The court further found that all of the funds withdrawn had remained in appellant's possession "to the present time." Finding of Fact 92; Trial Court Opinion at 26. In its order of equitable distribution, the court purported to distribute to appellant $96,903.96 ($79,403.96 + $7,900 + $9,600). Appellant argues that the court erred in basing its order of equitable distribution on assets that did not exist when the divorce complaint was filed or when the order of distribution was made. I agree.

"Property which a party has sold, granted, conveyed or otherwise disposed of in good faith and for value prior to the time proceedings for the divorce are commenced" is excluded by Section 401(e)(5) from the definition of marital property subject to equitable distribution. Appellee filed the complaint in divorce on August 5, 1980. Nevertheless, the trial court included as marital property subject to equitable distribution the full amount of funds that appellant had withdrawn in 1977. Despite its careful tracing of the funds through June 1977, the court made no attempt to determine, either how the funds were used thereafter, or what amount of the funds remained in appellant's possession. Appellant testified that she had used the funds to live on following the parties' separation. *See* N.T. February 5, 1981, at 72; N.T. March 18, 1981, at 18, 21, 59; Defendant's Exhibit 2. The court's Finding of Fact 88 that appellee had paid $100 per week to appellant from the time of separation until May 4, 1981, as well as paying the heating bills, electric bills, telephone bills, and taxes on the marital premises, is not disputed. Nevertheless, the record does not support the court's finding that the full amount of the funds withdrawn remained in appellant's possession. Appellant submitted a detailed list of expenses that she had incurred in excess of the amounts paid to her by appellant, and the court made no finding that these expenses were unreasonable or that they were not actually incurred. Appellee presented evidence to establish only that *some* of the funds withdrawn remained in appellant's possession as of August 5, 1980. *See* Plaintiff's Exhibits 6–9, 15.

Since under Section 401(e)(5) only property disposed of for value and in good faith is excluded from the definition of marital property, to the extent that the funds were not disposed of by the time the complaint was filed, or to the extent that they were not disposed of for value and in good faith, the funds were marital property. *Cf. Barriger v. Barriger,* 514 S.W.2d 114 (Ky.1974) (trial court did not err in including $10,500 previously spent in parties' net worth where husband dissipated funds by taking Caribbean cruise and losing over $8,000 gambling). I agree with the majority that the intentional dissipation of marital assets would not preclude the property from remaining marital property. *See* Majority Opinion at 1051. However, the trial court made no finding as to how the funds were used, but instead treated the full amount as marital property subject to equitable distribution. To the extent that appellant used the funds to provide for her own and her sons' living expenses following the parties' separation, the funds were not marital property subject to equitable distribution. *Cf. In re Marriage of Sevon,* 117 Ill.App.3d 313, 73 Ill.Dec. 41, 453 N.E.2d 866 (1983) (court rejects husband's argument that wife dissipated marital assets; wife spent $24,000 for personal and household expenses after husband left home; wife earned $348 biweekly; wife listed expenses and court found them to be appropriate); *Hellwig v. Hellwig,* 100 Ill.App.3d 452, 55 Ill.Dec. 762, 426 N.E.2d 1087 (1981) (court reverses finding of dissipation where husband's testimony that he used funds for family expenses and to support parties' lifestyle was uncontradicted); *Dean v. Dean, supra* (no abuse of discretion in not including in marital estate amounts spent by husband on vacations during pendency of divorce so long as amounts were reasonable). I should hold that on remand the trial court must determine, through application of Section 401(e)(5) and further development of the record, the extent to which the funds withdrawn by appellant are marital property. *See In re Marriage of Block,* 110 Ill.App.3d 864, 65 Ill.Dec. 769, 441 N.E.2d 1283 (1982) (given meager evidence regarding use of funds and purposes of mortgage, court cannot agree that funds were

dissipated and issue should be decided on remand on basis of more particular evidence).

This would not, however, complete the court's inquiry. For in determining what distribution of marital property is equitable, a court must consider the parties' dissipation of marital property, 23 P.S. § 401(d)(7), the value of the property set aside to each party, *id.* at § 401(d)(8), and the economic circumstances of each party at the time the division of property is to become effective, *id.* at § 401(d)(10). I should therefore further hold that on remand the court must consider appellant's use of the funds after the complaint was filed. If after the complaint was filed, appellant used the funds to provide for her own and her sons' living expenses, then the court should consider that fact in equitably distributing the marital property. *Cf. Scherzer v. Scherzer,* 136 N.J.Super. 397, 346 A.2d 434 (1975) (wife was not entitled to equitable distribution with respect to items that had become worthless since date of filing complaint where nothing in record suggests depletion was result of husband's deliberate action). If, on the other hand, appellant dissipated some of the funds, then the court should consider that fact in equitably distributing the marital property.

In determining appellant's entitlement to alimony, counsel fees and costs, the trial court relied, *inter alia,* on the fact that it had purportedly distributed "substantial marital property" to appellant. Conclusions of Law 10, 11. Since, as discussed above, the court's order of equitable distribution was in error, I should also reverse its orders regarding alimony, counsel fees and costs, with instructions that on remand it should reconsider appellant's entitlement to alimony, counsel fees and costs after it has properly distributed the marital property.

In determining appellant's entitlement to alimony pendente lite, the trial court relied, *inter alia,* on the fact that since October 1976 appellant had had the use of and income from liquid marital assets in excess of $94,000. Since, as discussed above, the court erred in treating the full amount of the funds withdrawn as marital property still in appel-

lant's possession, I should reverse the order denying alimony pendente lite. Alimony pendente lite is awarded ancillary to the principal action in divorce and is intended to enable the dependent spouse to maintain or defend the principal action in divorce. *Remick v. Remick*, 310 Pa.Super. 23, 456 A.2d 163 (1983). The trial court could not properly determine appellant's entitlement to alimony pendente lite on the basis of funds that she had in 1977, without determining the extent of the funds remaining in her possession in 1980, when the divorce complaint was filed. If on remand the court were to deny alimony pendente lite because appellant had sufficient funds remaining in 1980 to support herself and to pursue the divorce action, then it could not properly purport to distribute the funds so spent in its order of equitable distribution. To do so would be to distribute less property to appellant than the court apparently thought equitable considerations warranted merely because she had properly and reasonably used funds for her own support.

The orders of the trial court should be reversed and the case remanded for further proceedings in which, consistent with this opinion, the trial court would properly value the property at issue and properly determine an equitable distribution of the marital property and appellant's entitlement to alimony, counsel fees and costs, and alimony pendente lite.