500 A.2d 154

**Kenneth Balmaine LAWRENCE, Appellant at No. 2968PHL84,**

v.

**Ruby Rebecca Barnett LAWRENCE, Appellant at No. 3020PHL84.**

Superior Court of Pennsylvania.

Submitted June 21, 1985.

Filed Oct. 25, 1985.

58

Jacqueline M. Roberts, Philadelphia, for appellant (at 2968) and for appellee (at 3020).

I.B. Sinclair, Media, for appellant (at 3020) and for appellee (at 2968).

Before BROSKY, WATKINS and HOFFMAN, JJ.

BROSKY, Judge:

These are cross-appeals from an order awarding no alimony *pendente lite* [1] and awarding counsel fees. [2] We find no error in that portion of the order which declines to set an alimony *pendente lite* obligation. However, we vacate and remand for reconsideration of that portion of the order which awards counsel fees. This is deemed to be necessary because the Court of Common Pleas indicates in its opinion

---

1. That appeal is brought by the petitioner, wife.
2. That appeal is brought by the payor, husband.

that it considered, in making the award of counsel fees, an impermissible factor; namely, which of the two parties commenced the divorce action.

In its opinion, the court noted that the "wife earns approximately Eighteen Thousand ($18,000.00) Dollars per year while the ... husband earns Ten Thousand to Eleven Thousand ($10,000–$11,000) Dollars per year." Part of the court's opinion supporting its award of counsel fees to the wife states: "She is the Defendant in the divorce action. It was the Respondent who chose to bring the divorce action, thus causing the Petitioner to defend herself." Therein lies the error.

The history of the allocation of counsel fees and costs in a divorce action shows changes in the law in this Commonwealth. These variations over time are certainly to be expected in this area of the law which, after all, reflects societal attitudes about the nature of marriage, the economic situation of women and the equality of the sexes. At no point in this 170 year span has the identity of the petitioner in the divorce action been a factor in determining which party is to pay costs and fees.

The first rule of law on this issue that is discoverable in our Commonwealth's legal history is contained in a statute enacted in 1815.

> The Act of 1815, in its twelfth section enacts, that the court may award costs to the party in whose behalf the decree or sentence (that is of divorce) shall pass, or that each party shall pay his or her own costs, but the act does not authorize the imposition of all the costs upon the successful party.

*Shoop's Appeal,* 34 Pa. 233, 235–6 (1859). Thus, initially, costs could be imposed on the losing party in a divorce action—at the court's discretion.[3]

This statutory provision, which, in any eventuality, precluded the winning party from paying more than his own

---

**3.** Curiously, only the wife could, under this act, commence a divorce action!

costs, was evidently not always followed. One ante-bellum Chancellor wrote, "On general principles independent of the statute, I am convinced that the husband, plaintiff or defendant, is obligated to pay the expenses incurred by his wife in prosecuting or defending a divorce." *Melizet v. Melizet,* 1 Parson's Sel. Eq. Cas. 77, 78 (1843). This lack of deference to the statute was, no doubt, motivated by a recognition of the basic proposition that it takes money to make access to the courts a meaningful right, and was grounded in the assumption that it was the wife who would lack those economic resources. In any event, we can observe here, 140 odd years ago, the imposition of costs irrespective of who brought the action in divorce, albeit, only on the husband.

This theme—costs allocated as to need regardless of petitioner status—is amplified in an 1856 case:

> It has been the uniform practice to allow a wife destitute of a separate estate who is either suing or defending a case of divorce, such reasonable sum as will enable her to carry it on. She cannot sue *in forma pauperis*, for she is not a pauper if she is the wife of a man who has property. To deny her the means of paying for process and professional aid is to deny her justice. The amount is a question for the discretion of the court.

*Breinig v. Breinig,* 26 Pa. 161, 165 (1856). (Again, what may appear to us today to be a sexist bias, may have only been a recognition of the economic condition of wives.)

Nearly twelve decades passed before this rule of law was changed. In 1974, applying this state's Equal Rights Amendment, it was held unconstitutional for only the wife to be able to collect counsel fees and expenses.

> Section 46 has been interpreted as allowing the courts in appropriate cases to provide the wife, who is either suing or defending in divorce, a reasonable sum as will enable her to maintain herself during the pending action and provide for the necessary expenses of that action.

> ... As noted by the opinion in the Superior Court for reversal:

"If the purpose of the Act ..., is to insure that lack of financial ability will not prevent an action or defense by a wife in a divorce case, then this intent may only be implemented by legislation which would also preserve a husband's similar rights to bring or defend a divorce action where he lacked the financial ability and his wife has sufficient ability to pay."

*Henderson v. Henderson*, 458 Pa. 97, 100–101, 327 A.2d 60, 62 (1974). Left unchanged was that portion of the law which concerns us—that the recipient may be either the petitioner or the respondent in the divorce suit.

Just last year this Court reiterated both the new sex-blind principle (laid down in *Henderson*) and the two old principles of petitioner-status irrelevance (appearing in *Melizet*) and of need, (implicit in *Melizet* and enunciated in *Breinig*). It also went on to detail relevant factors to be considered in ascertaining need.

The court is, therefore, permitted to make such awards in its discretion, whenever it deems that the awards are necessary for either spouse to maintain or to defend a divorce action.... The court makes this determination by examining the size of the moving party's estate, the value of counsel's services, and the ability to pay.

*Semasek v. Semasek*, 331 Pa.Super. 1, 14, 479 A.2d 1047, 1054 (1984).

There is, then, a long-standing consistency in the law with regard to the irrelevance of whether or not the party seeking fees and costs had initiated the divorce proceeding. An excerpt from a respected treatise may explain why, in light of this tradition, the instant error occurred.

"The rule is founded upon elementary principles of justice. The denial of support to an injured wife during the pendency of her suit against her husband, or of the counsel fees and expenses occasioned thereby, would, by the closing of his purse, surrender to his control her right to secure redress. Even stronger is the need where the wife is the respondent; for by cutting her off from support and the means of employing counsel and meeting

the expenses of the litigation, the libelant could prevent her from contesting his suit, however unfounded it might be." 2 Freeman, Law of Marriage and Divorce in Pennsylvania, § 429, at 890 (2d Ed.1957).

*Wiegand v. Wiegand,* 242 Pa.Super. 170, 176, 363 A.2d 1215, 1218 (1976).

It may indeed be that where the destitute spouse [4] is the *defendant* in a divorce suit, that the appearance of need for counsel is "[e]ven stronger" and the possibility of injustice perhaps even greater. The economic inability to defend against an "unfounded" suit *may* be more insupportable to our sense of fair play than the economic inability to institute a founded suit. But, and this is the crux of the matter, the economic ability to institute suit is also a strong need. Both needs can be met; no choice between them is necessary. The fact that Freeman, as quoted in *Wiegand,* felt that the ability to defend was "[e]ven stronger" does not mean that the right to costs and fees does not exist when the needy party has instituted the suit.

To hold that a respondent can recover counsel fees simply because the petitioner instituted the action necessarily implies that a petitioner could never, no matter.how needy, recover counsel fees.

A moment's reflection reveals the consequences of such a holding. This Commonwealth's legal scheme would then be saying, in one part, that under certain circumstances one has a right to a divorce—that it is one's legal right and that this Commonwealth has seen fit to protect one's interests with this remedy—and, in another part, that one cannot compel the payment of monies that would enable that person to assert that right (although we *will* compel payment to enable one to defend).

Suppose, for example, that the plaintiff in a divorce action is a wife physically abused by her husband. Are we to say to her that because she is in the position of seeking to destroy her marriage, we will not enable her economically

---

**4.** As late as 1957, Freeman was still assuming that it would be the wife who was the destitute spouse.

to pursue the case, but that we would give the same person counsel fees and costs to seek to preserve the marriage? We think not.

We will not view our hypothetical plaintiff's efforts to be legally vindicated with opprobrium. She is not a "home-breaker" to be penalized by being denied her right to counsel fees and costs—or even by considering her plaintiff's status as a factor to be considered in their award.

As a plaintiff in a divorce action our hypothetical plaintiff is asserting, through the legal system, legal rights. The exercise of the legal system to obtain those rights and remedies is an act to be greeted with approbation.

We had, of course, supposed, for purposes of illustration, that the plaintiff was a physically abused wife. The plaintiff could, of course, be an abused husband, or have a wholly meritless case, or, even be the victimizer. The point is that we do not know that yet, and without the ability to obtain counsel, we will never know. We must assume that each case has the merit of our hypothetical, or, more accurately, at least has the right to be heard—*irrespective of who is the plaintiff or defendant,* or who ultimately prevails on the merits. Economic need of one party and economic ability of the other, must determine the allocation of the financial burden to pay counsel fees and costs.

■ In view of the disparity of the income of the parties (and that it is the payor who makes approximately one half as much as the payee), and in view of the court's statements regarding the payor having instituted the divorce action, we conclude that the latter factor was significant in the trial court's decision.

■ We also hold, as a matter of law, that the factor was not a legally relevant, or permissible, element to consider. Consequently, we vacate the award of counsel fees and costs and remand for reconsideration in light of the principles we have enunciated.

\* \* \* \* \* \*

Affirmed as to alimony *pendente lite* and reversed as to counsel fees and costs, and remanded for reconsideration consistent with this opinion. Jurisdiction relinquished.