583 A.2d 1157

**MELLON BANK, N.A., Appellant,**

v.

**Gregory J. HOLUB and Nancy L. Holub, Appellees.**

**Nancy L. HOLUB, Appellee,**

v.

**Gregory J. HOLUB, Appellant.**

Superior Court of Pennsylvania.

Argued June 20, 1990.

Filed Nov. 29, 1990.

Reargument Denied Jan. 14, 1991.

Thomas E. Reilly, Pittsburgh, for appellant (at 1616).

Thomas J. Michael, Pittsburgh, for appellant (at 1772).

Eugene J. Reinbold, Pittsburgh, for appellee (at 1616 & 1772).

Before CIRILLO, President Judge, and OLSZEWSKI and TAMILIA, JJ.

OLSZEWSKI, Judge:

This matter comes before this Court after a consolidated trial resulted in two final orders: the first, a judgment entered on behalf of appellee, Nancy Holub and against appellant, Mellon Bank on Mellon's action for liability on a loan; and the second, a final decree awarding the entire marital estate of Gregory and Nancy Holub to appellee, Nancy Holub.

The factual and procedural circumstances of each case are so intertwined that they are best understood when viewed together. Gregory and Nancy Holub were married on January 1, 1956. Two children were born of the marriage, both now adults. Throughout the early years of their marriage, Gregory and Nancy lived an affluent lifestyle. Gregory was employed overseas by various corporations and the couple enjoyed a life of international travel along with its attendant luxuries. All was not well with the marriage, however, and as early as 1962 the couple discussed divorce.

In 1968, Mr. Holub was hired by Gulf Oil Company and the couple returned to the United States, residing in Florida. Mr. Holub was then transferred to Pittsburgh in 1971 where the couple purchased a home. Mr. Holub remained with Gulf Oil until 1978 when his department was eliminated. He continued to act as a consultant to the company until mid 1979. Around this time, Nancy again requested a

divorce. Amicable discussions ensued between the two with the objective of structuring a suitable settlement agreement. Included among these discussions was a proposal by Mr. Holub to develop a business which would provide an income for Mrs. Holub. The parties eventually chose a fast-food franchise.

The new business required financing. In October of 1978, Mellon Bank agreed to lend $50,000.00 to a holding company created by Mr. Holub to fund the fast-food project. One of the conditions of the agreement required both Gregory and Nancy to sign personal guaranties. A guaranty containing what was purported to be Nancy Holub's signature was delivered to Mellon Bank. In fact, Mr. Holub had placed her signature on the guaranty without her permission. On the basis of the guaranty, the loan to the holding company was completed on September 6, 1979.

Returning to the marriage, on July 24, 1980, Nancy Holub filed a complaint in divorce, which sought equitable distribution, alimony, counsel fees and expenses.[1] Around the same time, Mr. Holub obtained a position with Merrill Lynch at its Stamford, Connecticut office. This situation remained unchanged until February 19, 1981, at which time Mr. Holub was arrested for criminal solicitation and attempted murder of his wife.[2] From this point on, the situation turned decidedly worse.

On March 2, 1981, due to delinquent payments, Mellon Bank filed a confessed judgment on the outstanding debt in the amount of $42,697.54. This judgment was later opened by agreement of the parties. On March 29, 1988, the court acknowledged this agreement and further ordered that Nancy Holub's liability would be tried together with the equitable distribution proceedings. The matter eventually proceeded to trial before the Honorable Eugene B. Strass-

1. The divorce action was eventually bifurcated and a divorce decree was entered on July 2, 1984. The economic issues were allowed to proceed separately and were eventually heard as part of the instant case.

2. Mr. Holub is currently serving a sentence of five to ten years after conviction on the solicitation charge.

burger, sitting without a jury. After several days of testimony over a span of some five months, the court, on January 10, 1989 entered its opinion, *decree nisi,* and order. First, the court found that Gregory Holub had placed Nancy Holub's signature on the Mellon Bank guaranty without her permission. Because, however, Mrs. Holub had later come to know of this act and because she had reaped the benefits of the business, the court found that she had ratified the falsified signature. Accordingly, the court found Mrs. Holub liable on the guaranty. Second, in regard to the equitable distribution, the court found that under 23 P.S. § 401(d), Mrs. Holub was entitled to the remains of the entire marital estate.

Post-verdict motions were filed by all parties. On October 5, 1989, in relation to the Mellon Bank case, the court granted Nancy Holub's motion on the basis that her signature was a forgery and, as such, it could not be ratified. The court, therefore, vacated its prior order and held in favor of Mrs. Holub. Mellon's motion for reconsideration was denied. Further, on October 11, 1989, following argument, the court denied Gregory Holub's post-verdict motions, relying on the reasons advanced in its opinion of January 10, 1989. Thereafter, Mellon and Gregory Holub filed their respective appeals.

## MELLON BANK

v.

## HOLUB

### NO. 1616 PITTSBURGH 1989

We will first consider the appeal of Mellon Bank. Mellon contends that the court erred in concluding that Nancy Holub's signature on the guaranty constituted a forgery. Rather, Mellon contends that the court correctly determined in its opinion dated January 10, 1989, that the signature was merely unauthorized and that Mrs. Holub, by her actions, had ratified its use. Mellon further contends that Mrs. Holub is now estopped from denying the validity of the signature.

In its opinion dated January 10, 1989, the court found as a fact that Mrs. Holub had been aware of the signature but that she had done nothing about it. The court further found that Nancy Holub had known of the connection between the signature and the loan for her business. Despite this knowledge, Mrs. Holub did not attempt to destroy the guaranty, nor did she confront her husband or Mellon Bank. Instead, as the court found, she began serving as a bookkeeper for the business for which she received a stipend of $25.00 per week. From these facts, the court concluded that Mrs. Holub had ratified her unauthorized signature.

Upon consideration of Mrs. Holub's post-verdict motion, however, the court concluded that her signature constituted a forgery and thus, could not be ratified. The court based this conclusion on *Heinrich Chemical Co. v. Ingram*, 104 Pa.Super. 257, 159 A. 77 (1931); *Funds for Business Growth, Inc. v. Maraldo*, 443 Pa. 281, 278 A.2d 922 (1971); *Austen v. Marzolf*, 294 Pa. 226, 143 A. 908 (1928); and *Wolgin v. Mickman*, 233 Pa.Super. 218, 335 A.2d 824 (1975). Each of these cases would stand for the proposition that a forged signature on a non-negotiable instrument can never be ratified. Because the court, after argument on post-verdict motions, found the signature of Mrs. Holub a forgery, it vacated its earlier order in favor of Mellon Bank.

Mellon agrees that a forged signature on a non-negotiable instrument cannot be ratified. Rather, it contends that the court erred in labeling the signature a forgery. Mellon argues that the court was correct in the first instance in construing the signature as merely unauthorized and thus, capable of being ratified. Because Mellon takes this position, it would therefore find the trial court's analysis set forth in the opinion of January 10, 1989 dispositive here.

Mellon argues against the court's finding of forgery for several reasons. First, Mellon contends that the cases cited by the court do not discuss what actually constitutes a forgery. Contending that forgery is defined by the crimes code as an act involving an intent to defraud, Mellon claims

that no such finding was ever made by the court in the instant case, nor do the facts support such a finding. Accordingly, Mellon contends that no forgery was present here, therefore, the court's earlier findings of ratification should control.

Mrs. Holub contends that the court was correct in determining that the signature on the guaranty was indeed a forgery. She maintains that an intent to defraud was present in this case, as Mr. Holub, by his use of the signature, attempted to create a liability in Mrs. Holub where none existed before. As ample evidence of this intent was present on the record, Mrs. Holub contends that the court's conclusions of forgery was correct. Accordingly, Mrs. Holub argues that the court properly held in her favor.

Both parties agree that an essential element of a forgery, whether in a civil or criminal context, is the intent to defraud. *Shay v. Merchants Banking Trust Co.*, 335 Pa. 101, 6 A.2d 536 (1939). Both parties also agree that Mr. Holub signed his wife's name to the guaranty and suretyship agreement. The parties disagree, however, as to whether an intent to defraud was shown in the instant case. Examining both arguments, we must agree with appellee that such an intent was indeed present in the instant case.

Appellant would rely on several cases in an effort to establish that the conduct of Mr. Holub in signing his wife's name was a mere unauthorized act. For example, in *Commonwealth v. DiPiero*, 205 Pa.Super. 312, 208 A.2d 912 (1965), this Court held that a party who signs the name of a non-existent person to a document does not commit a forgery as the non-existent person could not be harmed by the act. Similarly, in *Shay v. Merchants Banking Trust Co., supra,* our Supreme Court held that a forgery does not result where an insured to a life insurance policy signs his wife's name to a written assignment of the policy's proceeds because the insured was free to remove his wife as beneficiary of the policy at any time without her signature or consent. Because the wife possessed no right to the

proceeds during the life of her husband, she was not harmed by her husband's act of signing her name to the document. Absent the resulting harm, no forgery occurred.

The cases relied upon by appellant are clearly inapposite to the situation presented herein. As appellant would acknowledge, the use of an unauthorized signature capable of producing prejudice to the victim would constitute the crime of forgery. Just such a circumstance exits herein. Here, it is certain that the husband affixed the wife's signature to the guaranty. It is equally certain that had he not done so, no liability could have attached to appellee. It logically follows, therefore, that the presence of the appellee's signature on the guaranty harmed her to the extent that it presented the possibility of liability where none existed before. The fact that both parties had executed an earlier commitment letter to sign the guaranty does not change this result. Unless or until appellee actually placed her signature on the guaranty and agreed to be bound by it, no liability could attach to her. Accordingly, we find, as did the trial court, that the actions of Mr. Holub constituted a forgery.

Having concluded that the evidence was sufficient to show a forgery, we have no trouble deciding that a ratification of appellee's signature could not have occurred. Both parties agree that a forged non-negotiable instrument cannot be ratified. Because such existed in the present case, appellant's claim of ratification must fail.

Appellant also contends that appellee should be estopped from denying the validity of her signature. Appellant asserts that the conduct of appellee in the instant case should preclude her from escaping the effect of her husband's forgery. Specifically, it is argued that appellee knew of her forged signature, that she did nothing in the face of this knowledge, and that she "reaped the benefits" of the loan to the detriment of a completely "innocent" appellant. We cannot agree.

■ Of course, it is true that the doctrine of equitable estoppel is available to deny a defense where the party claiming estoppel lacked knowledge of the truth, relied upon the conduct of the party against whom the estoppel is asserted, and to its detriment, took action based on that conduct that prejudicially changes its position. *Cheltenham National Bank v. Snelling*, 230 Pa.Super. 498, 326 A.2d 557 (1975). It is also true, however, that "in the absence of expressly proved fraud, there can be no estoppel based on the acts or conduct of the party sought to be estopped, where they are as consistent with honest purpose and with absence of negligence as with their opposites." *In re Tallarico's Estate*, 425 Pa. 280, 288, 228 A.2d 736, 741 (1967).

■ Instantly, it is acknowledged that appellee knew of the signature on the guaranty as early as June of 1979. Appellee did not know, however, nor was she made aware, that her husband delivered the guaranty to appellant some three months later. When asked of the connection between her signature and the eventual loan, appellee testified that because of the disparity in the date of the actual loan in relation to the time she first noticed the guaranty, no association was made that they were one in the same deal.

Appellant makes much of the fact that appellee had "reaped the benefits" of this loan while working at the new business. The benefit actually received, however, was a mere $25.00 per week as a bookkeeper at a business which was designed to provide for her after the divorce. In fact, it was the husband who provided the bulk of the management for the business, and it was also he who structured the system for making payment on the loan to appellant. Indeed, if appellant relied on anyone's conduct during the course of the events which transpired in this case, it most assuredly relied on the husband's rather than appellee. The conduct of appellee in the transaction is not the sort of conduct envisioned by our courts which would hold her solely responsible for the guaranty despite her husband's forgery. *See In re Tallarico's Estate, supra.* Nor can it

be likened to fraud. Accordingly, we conclude that appellant's estoppel theory must fail.

## HOLUB

v.

## HOLUB

## NO. 1772 PITTSBURGH 1989

In the appeal from the court's equitable distribution order, Mr. Holub contends that the trial court abused its discretion by failing or neglecting to consider all relevant factors contained in 23 P.S. § 401(d) of the Divorce Code. This failure, Mr. Holub contends, was the result of of a preference or bias on the part of the court towards Mrs. Holub and against himself. Because of these abuses, Mr. Holub asks that we remand this matter to the trial court with instructions to equitably divide the marital property.

In its opinion, the trial court conducted an extensive history of the parties' marriage noting the various positions held by Mr. Holub as well as the variety of business interests he engaged in. In rendering its order, the court made specific mention of the factors outlined in § 401(d) namely: the length of the marriage; the relative earning capacities of the parties; the contribution by one party to the increased earning power of the other party; the opportunity for future earnings; the contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of marital property; the standard of living of the parties, and their relative needs.

Appellant contends that the court failed to consider whether the parties had any prior marriages, although he admits that this is irrelevant to this case. He also contends that the court did not address several other factors, namely: the age and health of the parties, and their likelihood of obtaining employment; the sources of income of both parties including social security and pensions; the value of the property set apart to each party; and the economic circumstances of each party at the time the division of property would be effected. Appellant argues that the failure of the court to consider these factors evinces an ill-will towards

him. He asserts that the conviction for soliciting another to kill his wife was the deciding factor in the court's distribution order.

Mrs. Holub disagrees with appellant regarding the court's distribution scheme. She contends that each factor of § 401(d) was examined in the court's opinion. In considering these factors, she argues that the court merely chose to give some a greater weight than others, which is well within the court's discretion. Regarding appellant's conviction, Mrs. Holub contends that the court viewed it only in terms of appellant's dissipation of assets, which is a perfectly proper use of such evidence. Finally, with regard to the amount of the award, Mrs. Holub relies on the court's conclusion that due to appellant's questionable business dealings, the actual estate consists of relatively few assests, some of decreased value. Accordingly, Mrs. Holub argues in favor of upholding the distribution order.

 The standard of appellate review of orders concerning equitable distribution is an abuse of discretion. *Sergi v. Sergi*, 351 Pa.Super. 588, 506 A.2d 928 (1986); *Semasek v. Semasek*, 331 Pa.Super. 1, 479 A.2d 1047 (1984). In utilizing this standard, we apply the legislative guidelines found in the Divorce Code. For matters concerning equitable distribution, the guidelines are found at § 401(d). The weight to be given to the § 401(d) factors is well within the discretion of the trial court. *Sergi, supra* 351 Pa.Super. at 598, 506 A.2d at 934. Indeed, in *Semasek* we noted:

... that there is no simple formulation by which to divide marital property. The method of distribution derives from the facts of the individual case. The list of factors of § 401(d) serves as a guideline for consideration, although the list is neither exhaustive nor specific as to the weight to be given the various factors. Thus, the court has flexibility of method and concomitantly assumes responsibility in rendering its decisions.

331 Pa.Super. at 11, 479 A.2d at 1052.

 Upon examination of the trial court's opinion in this matter, it appears that Mrs. Holub's position is the

correct one. The court did an extensive analysis of the facts of this case and how they apply to § 401(d). While the court made specific mention of certain provisions of § 401(d), it is clear that the court took the entire statute into consideration. Any appearance of bias or ill-will towards appellant seems to be the result of his dissatisfaction with the award, not any abuse on the part of the trial court. Any mention of appellant's criminal conviction was done solely in the context of his dissipation of the marital assets, a use well within the trial court's discretion. *See LaBuda v. LaBuda,* 349 Pa.Super. 524, 503 A.2d 971, *appeal denied,* 514 Pa. 648, 524 A.2d 494 (1987) (consideration of husband's extramarital affair not improper under § 401(d) where use limited solely to issue of dissipation of marital assets). Nor did the court err in awarding the entire marital estate to appellee. *See Fratangelo v. Fratangelo,* 360 Pa.Super. 487, 520 A.2d 1195 (1987) (trial court erred in failing to award entire estate to wife in light of, among other things, § 401(d)(7) factors). The court made numerous findings with respect to the value of the marital estate at the time of its division, and because they had the best opportunity to evaluate the evidence, we find that the award of equitable distribution was proper.

Judgments affirmed.