506 A.2d 928

Alita K. SERGI

v.

Edward SERGI, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 29, 1985.

Filed March 12, 1986.

Henry A. Hudson, Jr., Greensburg, for appellant.

Paula Hopkins, Pittsburgh, for appellee.

Before WIEAND, DEL SOLE and HESTER, JJ.

DEL SOLE, Judge:

Appellant and Appellee were married on December 19, 1974 and a divorce granted on September 21, 1983. The present matter came before the Honorable Lawrence W. Kaplan for hearing on the issue of equitable distribution, being the only remaining claim in the parties' divorce action. A hearing was held on January 9, 1985 at which time the court set down in narrative form findings and recommendations for distribution and indicated a decree nisi would be entered. The decree nisi was filed January 30, 1985. Following arguments on Appellant's exceptions and Appellee's petition for post-trial relief, the court entered a final order dismissing Appellant's exceptions, granting in part and denying in part Appellee's petition for post-trial relief and thereby amending the decree nisi. The decree nisi as amended and made final by the trial court's order was subsequently reduced to the judgment from which this appeal is taken.

Appellant questions: 1) whether the trial court used the proper value of the parties' real estate in decreeing equitable distribution; 2) whether the trial court properly considered the Appellant's age, income and financial station in life when dividing the marital property; and 3) whether the trial court was procedurally correct in entering its final decree.

Initially, we note that "(a)n appellate court will reverse an order determining equitable distribution of marital property only for an abuse of discretion by the trial court." *Baraff v. Baraff*, 338 Pa.Super. 203, 210, 487 A.2d 925, 929 (1985). "Under this standard, we do not usurp the hearing court's duty as fact finder. Rather, we apply the legislative guidelines of the Divorce Code to the record to determine whether or not the hearing court has abused its discretion." *Barnhart v. Barnhart*, 343 Pa.Super. 234, 237, 494 A.2d 443, 444 (1985); *Semasek v. Semasek*, 331 Pa.Super. 1, 6, 479 A.2d 1047, 1050 (1984). "An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence ... However, an abuse of discretion will be found by this Court if the trial court failed to follow proper legal procedure or misapplied the law." *Braderman v. Braderman*, 339 Pa.Super. 185, 190, 488 A.2d 613, 615 (1985). Considering this standard of review, we shall address the issues seriatim.

The thrust of Appellant's first claim is that the trial court erred in selecting the date of trial value for the jointly owned marital residence as opposed to the date of separation for purposes of equitable distribution. The importance to the parties as to which valuation date is ultimately selected becomes apparent when it is realized that the home was acquired for $36,000, valued at the date of separation at $50,000 and at the date of the equitable distribution hearing at $63,000 (R.R.4).

We begin our analysis by turning to the Divorce Code of 1980 for guidance.[1] Section 403(b) states "(b)oth

1. 23 P.S. § 101 et seq.

parties shall submit to the court an inventory and appraisement of all property owned or possessed at the time action was commenced."[2] This direction to the parties does not however dictate a specific date for valuation to be used by the court when finally dividing the property. Appellant directs our attention to § 401(e)(4) in support of the proposition that valuation should occur as of the date of separation. Section 401(e)(4) reads:

(e) For purposes of this chapter only, "marital property" means all property acquired by either party during the marriage except:

(4) Property acquired after separation until the date of divorce . . .

Reliance on this section of the Divorce Code in support of Appellant's position is ill-founded. This language indicates the date at which property is no longer to be included for purposes of equitable distribution. This is distinct from the date which a court could use for valuation purposes of property that is determined to be marital and thus subject to equitable distribution.

■ In support of their respective positions, both parties rely upon this Court's decision in *King v. King*, 332 Pa.Super. 526, 481 A.2d 913 (1984). In *King*, we reviewed the valuation of a pension for purposes of equitable distribu-

---

**2.** This is in accord with Pa.R.C.P. 1920.33(a) which states in part:
Within sixty days after service of a pleading or petition containing a claim for determination and distribution of property under Section 401 of the Divorce Code, each party shall file an inventory and appraisement of all property owned or possessed at the time the action was commenced and all property transferred within the preceding three years. The inventory and appraisement shall set forth:
1) All marital property in which either or both have a legal or equitable interest individually or with any other person at the date of filing the complaint and the name of such other person;
2) the date each asset was acquired, the cost, if purchased, or the value at time of acquisition if not purchased;
3) a description of all property in which a spouse has a legal or equitable interest which is claimed to be excluded from marital property and the basis for such exclusion, and
4) the value of each asset as of the date the action was commenced and the amount, nature and effective date of any outstanding lien and the name and address of the holder of the lien."

tion. More recently, we addressed the related issue of the valuation of retirement benefits in *Braderman supra.* We recommended in *King* and *Braderman* that such plans should be valued as of the date of the hearing. *Braderman supra,* 488 A.2d at 619. After the present value is determined it was pointed out that it is then necessary to calculate that portion of the present value that was earned during the marriage. *Braderman supra.*

As has already been mentioned, the drafters of the Divorce Code have provided that the parties are to submit to the court an initial valuation of their property at the time the action is commenced. To mandate that a trial court be limited to effecting an equitable distribution based only on this valuation information could result in a distribution based on stale financial data. This would hardly be in keeping with the overall declared policy of the Commonwealth which is to:

> (e)ffectuate economic justice between parties who are divorced or separated and grant or withhold alimony according to the actual need and ability of the parties and *insure a fair and just determination and settlement of their property rights.*

23 P.S. § 102(a)(6) emphasis added.

Likewise, to require a trial court to value property as of the date of separation may also result in the use of stale financial data and subsequent inequitable distribution of marital property. An excellent example of the inequality that could result from such a requirement has been provided by the Honorable Eugene B. Strassburger, III, Court of Common Pleas of Allegheny County, Family Division. Judge Strassburger suggests:

> Suppose at separation in 1975, Husband and Wife own both Blackacre and Whiteacre, each worth $100,000.00. At the date of trial in 1982, Whiteacre is worth $50,000.00 but Blackacre has increased in value to $300,000.00. If date of separation values were used, I could award Blackacre to one party and Whiteacre to the other on a 50–50

594

split. Yet Blackacre is today worth six times what White-acre is worth.[3]

It is similarly possible to imagine a situation in which it would be inequitable to value marital property either at the date the action is commenced, or the date of hearing. This Court recently encountered such a factual situation in *Barnhart supra* wherein we found the trial court erred in failing to include the value of husband's pension as marital property even though it was no longer in existence at the time the divorce complaint was filed. *Id.*, 494 A.2d at 446. If the valuation date were restricted to either the date the action was commenced or the date of hearing, our determination that the pension is subject to equitable distribution as marital property would be meaningless. In such a situation, the date of separation would obviously be an appropriate valuation date. We noted that failure to include the pension "would completely nullify the protection of the marital property distribution provisions of the code since it would mean that any property acquired during marriage and subject to equitable distribution could be removed from such distribution by a spouse merely consuming it after separation and before the divorce." *Id.* Failure to permit a trial court to value marital property at the time of separation could result in allowing a spouse to reduce the value of marital property through unbridled consumption.

Since equitable results will most likely flow from providing the court with the most recent information available, it is persuasively argued that this would occur by valuing marital property as of the date of the equitable distribution hearing. However, as the above discussion indicates, such is not always the case. Therefore, we do not attempt at this time to establish a valuation to be used in every situation. To recognize a specific valuation date as a matter of law would deprive the trial court of the necessary discretion required to effectuate economic justice.

3. *Treasure v. Treasure,* No. 246 (Allegheny Ct.C.P., October 1980), 130 P.L.J. 389 (1982).

In the present case, the marital residence was valued at the date of separation at $50,000 and at the date of the equitable distribution hearing at $63,000. (R.R.) The parties net equity was found to be $22,765 at the time of separation and $39,500 (rounded off) as of the date of the hearing. For purposes of distribution, the trial court valued the marital property of the parties in the residence to be $39,500 (R.R. 235). The court was fully cognizant that in utilizing the date of trial value, the value represented an increase that was due to both general market factors and expenditures by the husband since separation. Such considerations led to the court refusing to grant the Appellee a rental value for the husbands occupancy between separation and trial. With respect to this concern the court stated:

Wife has requested a rental value in regard to the premises which have been occupied by husband for the past four and a half years. Generally we would give considerable thought to this but for the fact that we are considering the day of trial value of this property and that the resulting appreciation also inures to her benefit.

The husband has been under the obligation to pay the mortgage, which has been paid down approximately $3,700 since separation, upon which the taxes, upkeep and general maintenance have been his responsibility.

It has been our general approach not to grant a fair rental for the reasons indicated, although I will admit that on occasion, where there has been a long period of separation and a long continuous use of the premises by one party to the exclusion of the other, that perhaps some fair return should be placed on the investment value of the nonoccupant's capital. We do not, though, find it appropriate in this particular case.

(R.R. 228–229).

While the Appellee may be thought of as having received the benefit of property appreciation occasioned by Appellant's efforts, Appellant received the benefit of occupying the residence from the date of separation to the date of

hearing, a period of approximately four and a half years, without having to account to Appellee for a rental value. It cannot be said that the trial court abused its discretion in valuing the property at the date of hearing given the facts of this case.

Appellant next contends that while the trial court mentioned the disparity of income, age and financial station in life of the parties, it failed to take cognizance thereof and divided the marital property without regard to it. It is further asserted in this regard that the trial court failed to properly consider the parties' contributions which could be traced to their premarital funds.

The court found that prior to marriage, each owned an automobile which after marriage was subsequently traded for another. Both parties were awarded the respective vehicles taken by them and these items were not further considered as they were found to have little value. In addition to the marital residence, previously discussed, the court determined that a joint Dollar Bank account in the amount of $13,000 although involving premarital cash had become a marital asset. (R.R. 230). Premarital cash consisted of savings accounts. The Appellant's account totaled $9,557.48 and the Appellee's $4,056.32. (R.R. 224). These cash assets were found to have been transmuted into marital property over time. Discussing the premarital cash the court stated:

It has been my approach, where we have definable premarital cash and where the marriage has not been of a long duration, to give some credit to the respective parties for these premarital cash assets, but not necessarily the entire amount.

I look upon these credits as being more or less a disappearing credit, depending upon the length of the marriage. If the parties have been married a long time, perhaps there is no credit whatsoever. But in this case, the parties had been married five and a half years, and I

feel that they are each entitled to some credit for their premarital cash ...
(R.R. 230–231).

The parties were given credit for the premarital cash in the amount of $2,000 to the Appellee and $5,000 to Appellant leaving Appellant a $3,000 credit. (R.R. 231).

■■■ While Appellant argues that Appellee only contributed $2,000 in cash and $2,000 went for the car she left the marriage with, testimony on this point was contested. Appellee testified her premarital cash consisted of $4,000 and was blended into the joint account after marriage. (R.R. 63). While Appellant may disagree with Appellee as to the amount of premarital cash she contributed to their joint account the court did not abuse its discretion in apparently believing Appellee's version of the facts. "In reviewing the trial court's determination, we must keep in mind that the court was free to accept or reject the parties' testimony." *Baraff supra*, 487 A.2d at 929. Having determined that the premarital cash had been transmuted into marital property, the court was under no obligation to return the full value of the premarital cash to the parties prior to working an equitable distribution.

■■■ Prior to distributing the marital property, the trial court indicated "that an equal distribution would be used as a starting point, and thereafter the factors provided under Section 401 D of the divorce code would be applied to determine if there should be any deviation from the recommended initial distribution of 50–50." (R.R. 232).[4]

4. 23 P.S. § 401(d) states:
(d) In a proceeding for divorce or annulment, the court shall, upon request of either party, equitably divide, distribute or assign the marital property between the parties without regard to marital misconduct in such proportions as the court deems just after considering all relevant factors including:
(1) The length of the marriage.
(2) Any prior marriage of either party.
(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

The court then engaged in an extensive review of the factors which influenced its distribution plan. It was pointed out that this was a relatively short marriage without children. (R.R. 232). Further:

There is considerable difference in age between the parties ... Given the fact that they are both gainfully employed and hopefully appear to be in good health, this age differential should not enter into consideration in this particular case. Both seem to be maintaining the station in life consistent with that which they enjoyed prior to their marriage, and during their marriage, more importantly, and we received no evidence to indicate that they are having any difficulty in making ends meet.

(R.R. 233).

The court then indicated:

While there was discussion about contribution by one party to the other for educational purposes, that certainly would not be appropriate in this case since the education was obtained while both parties continued to work, and it can't be said with any certainty that husband was any more responsible for wife's education than she herself was.

Their contribution to the marriage during the marriage was substantially equal ...

Based upon these factors, the Court would be hard pressed to find any reason to deviate from the standard

(4) The contribution by one party to the education, training, or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including but not limited to medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

which is generally followed, which is that an equal distribution will generally be equitable. And we would make such a finding in this particular case.

(R.R. 233–234).

The marital assets were found to total $56,190 and consisted of the following: residence $39,500; furniture/appliances $2,000; Mellon account with interest $1,690; Dollar account $13,000. (R.R. 235). Half the assets therefor came to $28,095. Appellant received the residence, and furniture/appliances giving him a total of $41,500. Appellee received the bank accounts for a total of $14,790. Appellant was given his $3,000 credit for premarital assets contributed, plus an additional $190 as the result to his obligation to pay marital debts. To bring the Appellee to the figure representing half the marital assets, Appellant was found to owe Appellee a balance of $10,215. (R.R. 235).

It is true that "(t)he concept of equitable distribution is not an equal division of marital property." *Semasek, supra,* 331 Pa.Super. at 11, 479 A.2d 1952. "(A)n equitable division often will not be even; the essence of the concept of an equitable division is that 'after considering all relevant factors,' the court may 'deem( ) just' a division that awards one of the parties more than half, perhaps the lion's share of the property." *Platek v. Platek,* 309 Pa.Super. 16, 24, 454 A.2d 1059, 1063 (1982). While Appellant may disagree with the weight the court chose to accord to the parties ages, incomes, and educations, the record indicates that consideration was given to the factors provided in § 401(d) of the Divorce Code. On previous occasion, this Court has stated:

We note that there is no simple formula by which to divide marital property. The method of distribution derives from the facts of the individual case. The list of factors of 401(d) serves as a guideline for consideration, although the list is neither exhaustive nor specific as to the weight to be given the various factors. Thus, the

court has flexibility of method and concomitantly assumes responsibility in rendering its decisions.

*Semasek, supra,* 331 Pa.Super. at 11, 479 A.2d at 1052.

While another court may choose to give different weight to the factors of § 401(d), it is apparent that the trial court considered these factors in its determination. Since the record fails to reflect an abuse of discretion on the part of the trial court, its decision must stand with respect to the weight accorded the factors of § 401(d).

■ Finally, Appellant claims the trial court was procedurally incorrect in modifying its decree entered at trial with a later Decree Nisi. Initially it appears that Appellant confuses the court's announcing its decision on record with the entry of a decree. However, we have reviewed Appellants Exceptions to Order Or Decree of Equitable Distribution filed January 21, 1985 as well as his Exceptions to Order Or Decree of Equitable Distribution filed February 11, 1985 and find he has failed to preserve this issue of review. *See, Sutliff v. Sutliff,* 326 Pa.Super. 496, 502, 474 A.2d 599, 602 (1984).

Accordingly, the judgment of the trial court is affirmed.

Judgment affirmed.

WIEAND, J., files a concurring opinion.

WIEAND, Judge, concurring:

The issue in this appeal is whether marital property, for purposes of making equitable distribution between the spouses, should be valued as of the date of separation or as of the date of hearing before the court. This is a difficult issue. The values of most family investments, whether in the form of real estate, a family business, securities, a pension fund, an automobile or a bank account, fluctuate between the date of separation and the date of making equitable distribution. Frequently they will increase in value because of personal effort or capital expenditures made by one of the spouses. In other instances, the value of marital property may increase or decrease solely because

of market conditions. Decisions by the courts of other jurisdictions as to a valuation date are not uniform. See: Annot., 34 A.L.R.4th 63 (1984). In Pennsylvania, the Divorce Code of April 2, 1980, P.L. 63, No. 26, 23 P.S. § 101 et seq. does not provide an unequivocal answer. Nevertheless, it must be consulted.

Section 401(e) of the Divorce Code provides that for purposes of making distribution, " 'marital property' means all property acquired by either party during marriage except ... (4) [p]roperty acquired after separation until the date of divorce...." If "increased value" is to be deemed "property acquired after separation," then it would seem that an increase in value after separation should not be subject to equitable distribution.[1] Such a rule seems to be consistent with Pa.R.C.P. 1920.33(a) which directs each party to a divorce action to file, "[w]ithin sixty days after service of a pleading or petition containing a claim for ... distribution of property[,]" an inventory and appraisement of property.

I would hold, on the basis of Section 401(e)(4) of the Divorce Code, that in the absence of extraordinary circumstances, the date for evaluating marital property is the date on which the parties separate. In most instances this will achieve a fair result. The use of the date of separation, moreover, will encourage a prompt settlement of property rights between the spouses. It will also have the advantage of allowing the parties to get on with their separate lives as quickly as possible without being required to calculate the effect of each expenditure of time or capital upon a later decree of distribution. Even in protracted divorce actions, the parties' economic endeavors following separation will not be hampered unnecessarily by fears that they will be robbed of the benefits of their own endeavors by a future decree of court.

Nevertheless, there will be circumstances in which it will be inequitable to place a value on marital property as of the

1. Compare: *Anthony v. Anthony,* —— Pa.Super. ——, —— A.2d —— (J. E1008/85; filed ).

date of separation and make distribution according to such a value. In those situations the Divorce Code vests sufficient discretion in the trial court to achieve a fair and equitable result. In making distribution a court is required to consider "all relevant factors including: ... (5) The opportunity of each party for future acquisitions of capital assets and income. (6) The sources of incomes of both parties[.] ... (8) The value of the property set apart to each party.... (10) The economic circumstances of each party at the time the division of property is to become effective." 23 P.S. § 401(d). In making distribution, therefore, a court may, where necessary to achieve equity, take into consideration events which have occurred and which have affected the value of marital property following separation.

The instant facts present one of those exceptional cases. The marital home which is the subject of dispute in the instant case was owned by husband and wife as tenants by the entireties, having been purchased during the marriage for $36,000.00. On the date of separation it had a value of $50,000.00, and on the date of hearing, it was appraised at $63,000.00. The parties had an equity in the home of $22,765.00 at the time of separation, but this equity had increased by the time of hearing to approximately $39,-500.00. Following separation, the property was occupied by appellant, who, during the four years intervening prior to the hearing, made monthly mortgage payments which contributed to the increased equity in the home. The trial court accepted the value at the time of hearing and divided the equity of $39,500 equally between the parties. Because the court determined that the rental value of the property occupied by appellant and the contributions to capital which he had made were roughly equal, the court did not specifically compute or divide the rental value of the home or the mortgage payments or improvements made.[2] Under these circumstances, I agree with the majority that the trial court

2. In an appropriate case, the resolution of these matters by approximation might be questioned. In the instant appeal, however, this aspect of the court's computation has not been challenged.

did not abuse its discretion by making distribution according to the value of the dwelling house on the date of the equitable distribution hearing.