J-A29037-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KIMBERLY MILLER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL J. ORR | : | No. 266 WDA 2021 |

Appeal from the Order Entered February 1, 2021
In the Court of Common Pleas of Butler County Domestic Relations at
No(s):  F.C. No. 15-90762-D

BEFORE:  BENDER, P.J.E., BOWES, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                **FILED: JANUARY 19, 2022**

Kimberly Miller (Miller) appeals an order of the Court of Common Pleas of Butler County (trial court) adopting in part a master's recommendations regarding the equitable distribution of marital assets belonging to her and her ex-husband, Michael J. Orr (Orr).  We affirm.

**I.**

Miller and Orr were married on August 31, 2013.  During the marriage, on July 10, 2015, they purchased from Orr's parents a home (the marital residence) located at 423 Canterbury Trail in Cranberry Township, Pennsylvania.  Only Orr's name appeared on the deed to that home, and the mortgage on the property was solely in his name.  Orr's parents had sold the

_____

[*] Retired Senior Judge assigned to the Superior Court.

marital residence for $495,000.00 and, at closing, Orr and Miller made a down payment of $97,042.61 in the form of a check linked to a joint marital account.[1]

Miller and Orr began divorce proceedings on November 9, 2015. At that time, they had no children and had only resided in the marital residence for 122 days. The equitable distribution of their marital property was overseen by a master who held an evidentiary hearing on April 30, 2018.[2] An appraiser testified at the hearing that the marital residence had a fair market value of $596,000.00 at the time of sale and all other relevant times.

Orr's father also testified about the circumstances of the sale of the marital residence to his son. He explained that Miller and Orr had initially planned to have both of their names appear on the deed of the home, but that Miller's name was not included on the deed because her credit score was not good enough to qualify for a mortgage. Orr's father also stated that the purchase price was lowered so that Orr could afford it, and that by selling the home to Orr, the family would save money on transfer taxes and realtor

---

[1] Another $8,000.00 was due at closing, but that sum is not at issue in this appeal.

[2] A premature appeal was filed before Miller's exceptions were ruled upon, and in **Miller v. Orr**, 725 WDA 2019 (Pa. Super. June 3, 2020) (unpublished memorandum), this Court quashed the appeal and remanded the case so that the trial court could rule on those exceptions and render a final appealable judgment.

commissions, which would have "inflate[d] the price of the house[.]" ***See*** Master's Hearing, 4/30/2018, at pp. 190, 221.

In addition to the dispute over the value and remaining equity in the marital residence, each of the parties also asserted that their respective parents had made loans to Miller and Orr that were, essentially, marital liabilities. Miller claimed that Orr was jointly responsible for paying back her parents' loan of $5,000.00, while Orr claimed that Miller was jointly responsible for paying back his parents' loan of $12,500.00.

On June 5, 2018, the master filed a Report and Recommendation containing findings of fact and determinations as to how Miller and Orr's marital property should be divided. The master found that each party should receive an equal share of the equity in the marital residence subject to equitable distribution – $43,004.53. The master arrived at that sum by making several deductions from the home's total market value, including the remaining mortgage amount, Orr's pre-marital funds used to purchase the home, and a reduction of the purchase price from the home's fair market value by Orr's parents.

As to the reduction in the purchase price, the master relied on testimony from Orr's father that the home was deliberately sold for less than its market value so that it would be affordable to Orr. Orr's father did not himself characterize the lower purchase price as a "gift," but he had stressed that the price of the home was intended to benefit Orr and not Miller. ***See*** Master's

Hearing, 4/30/2018, at pp. 214-16.[3] Additionally, the master found that "to the extent any 'benefit of the bargain,' or 'gift,' on the transfer of [the marital home] from [Orr's parents] to [Orr] existed, it was due solely to the relationship of the parents to the son, the sole party to whom the property was transferred, and was not intended to be a benefit or gift [to Miller]." Master's Report and Recommendation, 6/5/2018, at 3.

As to the opinion of Miller's expert that the marital residence had a fair market value of $596,000.00, the master described that amount as "inflated." *Id*. at 4. Instead of adopting that figure, the master found the market value of the residence to be "$500,000.00 **after** consideration of expenses of sale, transfer and/or liquidation associated with the asset." *Id*. (emphasis in original). Like Orr's father, who described how transfer taxes and realtor commissions would "inflate" the price of the house, the master seemed to view the absence of those costs as a benefit of the bargain or gift that was intended for Orr and not Miller. *See id*.

As to the asserted loans from the parties' parents, the master declined to find any joint marital liability. To the extent Orr's parents loaned a sum of $12,500.00, Orr was directed to assume sole liability for paying it back. To

---

[3] The remaining distributions of the marital assets are not germane to any of the issues raised in this appeal.

the extent Miller's parents loaned a sum of $5,000.00, Miller was directed to assume sole liability for paying it back.

Miller timely filed exceptions to the master's Report and Recommendation. Of relevance in this appeal, Miller challenged the valuation of the marital residence, as well as several determinations that certain sums of money were not subject to equitable distribution. Specifically, Miller argued that the record does not support the findings that the proceeds of the sale of Orr's pre-marital home ($60,995.47) were not marital property, that Orr received a gift from his parents toward the purchase of the marital residence ($101,000.00), and that Orr and Miller received a loan of $12,500.00 from his parents that each were equally responsible for paying back. Miller argued that those errors made the equal distribution of the remaining marital assets inequitable.

A hearing was held on Miller's exceptions on January 7, 2021. The trial court granted in part and denied in part Miller's exceptions to the master's Report and Recommendation. Miller timely appealed, raising five issues concerning the factual findings that determined the respective amounts to be distributed to her and Orr upon the dissolution of their marriage:

> 1. Whether the Trial Court erred and abused its discretion in affirming the Master's determination that the equity in the marital residence . . . was $43,004.53 based on valuing the marital residence at $500,000.00 when the only testimony and evidence offered on the value of the marital residence was that of [Miller's] expert appraiser, who valued it a $596,000.00.

2. Whether the Trial Court erred and abused its discretion in affirming the Master's decision to award $60,995.47 to [Orr] from the equity in the Marital Residence and then dividing the remaining equity equally between the parties.

3. Whether the Trial Court erred and abused its discretion to the extent that it or the Master determined that any gift was made from Husband's parents to [Orr] in the purchase of the Marital Residence as there is no evidence, at all, in record supporting the existence of a gift.

4. Whether the Trial Court's determination of the existence of a $12,500.00 marital loan from [Orr's] parents fails to be supported by the record and, therefore, is an abuse of discretion.

5. Whether the Trial Court erred and abused its discretion in affirming the Master's equal division of the remaining marital assets, after awarding [Orr] a significantly disproportionate amount of the equity in the Marital Residence.

Appellant's Brief, at 7 (numbering and punctuation modified).[4]

## II.

## A.

Miller first contends that the trial court erred in valuing the marital residence at $500,000.00 because the record evidence establishes a fair market value of $596,000.00. We find that no relief is due as to this claim

---

[4] The trial court's rulings on equitable distribution are subject to an abuse of discretion standard of review. **See Dalrymple v. Kilishek**, 920 A.2d 1275, 1280 (Pa. Super. 2007).

because the certified record indicates that the master and the trial court, in fact, applied a market value which Miller argues is the proper amount.[5]

While not completely explicit, it appears that the master and the trial court operated from the starting premise that the marital residence had a total market value of $596,000.00, and they then derived the respective equitable distribution amounts by deducting from that sum the outstanding mortgage debt ($396,000.00), the proceeds from the sale of Orr's pre-marital residence ($60,995.47), and the amount of a gift Orr received from his parents in the form of a reduced purchase price ($596,000.00 (market value) - $495,000.00 (purchase price) = $101,000.00 (gift amount)). *See* Trial Court Opinion, 2/3/2021, at 2.

From the appraised market value of $596,000.00, there remained $38,000.53 after those deductions. For reasons that are not clear (though also not disputed), the master and the trial court added an additional $5,000.00 to the total value of the marital residence subject to equitable distribution, finally reaching the sum of $43,000.53. As can be seen, the master and the trial court calculated the equity in the marital residence only after starting with an "inflated" market value of $596,000.00 and then making

---

[5] Alternatively, and as discussed further below, any equity in the marital residence derived from a fair market value over the purchase price of $495,000.00 was considered a gift from Orr's parents for his benefit alone, excluding such equity from Miller and Orr's joint marital property.

the previously discussed deductions to that figure. Miller has raised those deductions as separate grounds for appellate relief so they will be addressed in turn below.

**B.**

Miller contends that the trial court erred in finding that Orr was entitled to the proceeds of the sale of a pre-marital residence and then deducting that sum ($60,995.47) from the equity in the marital residence that is subject to equitable distribution.

"Marital property" is subject to equitable distribution and is defined broadly as "all property acquired by either party during the marriage and the increase in value of any nonmarital property[.]" 23 Pa.C.S. § 3501(a). Property acquired prior to the marriage is not included in that definition. *Id*. at § 3501(a)(1).

As a general matter, it is presumed that any funds comingled with marital financial assets become marital property. *See Sergi v. Sergi*, 506 A.2d 928, 932-33 (Pa. Super. 1986). However, this presumption can be overcome if the finder of fact determines that the comingled funds can be "traced" to a pre-marital source. *See Busse v. Busse*, 921 A.2d 1248, 1257 (Pa. Super. 2007); *Winters v. Winters*, 512 A.2d 1211, 1215-16 (Pa. 1986); *see also* 23 Pa.C.S. § 3501(a)(1) (excluding from definition of marital property assets "acquired prior to marriage or property acquired in exchange for property acquired prior to the marriage.").

- 8 -

It is undisputed that Orr purchased the pre-marital residence before he married Miller. The property was titled and mortgaged in his name alone. Miller and Orr cohabitated in the pre-marital residence for years before they were married, but cohabitation alone does not make the home marital property. **See** 23 Pa.C.S. § 3901(a)-(b). Moreover, there is no evidence in the record that the value of the pre-marital residence appreciated between the period of habitation through the point at which the pre-marital residence was sold.

Although the proceeds of the sale of the pre-marital residence were briefly comingled with marital funds used to purchase the marital residence, any presumption in favor of Miller was overcome. The equity Orr accumulated in his pre-marital home prior to the marriage was not marital property. The proceeds from the sale of the pre-marital home were kept in the joint marital account for a short time immediately preceding the closing on the purchase of the marital residence. The sale of the pre-marital home was also clearly intended to fund the purchase of the marital residence. Thus, as the funds used to purchase the marital residence could easily be traced back to a pre-marital source, the trial court did not err in adopting the master's

recommendation to exclude the contested sum of $60,995.47 from equitable distribution.[6]

## C.

Miller's next issue is that the trial court abused its discretion in finding that Orr's parents lowered the purchase price of the marital residence by $101,000.00, constituting a "gift" to Orr that would not be subject to equitable distribution.

As stated above, "marital property" is defined as "all property acquired by either party during the marriage and the increase in value of any nonmarital property." 23 Pa.C.S. § 3501(a). Certain assets, however, are not to be considered marital property, including "[p]roperty acquired by gift . . . bequest, devise or descent." *Id.* at 3501(a)(3). "A valid *inter vivos* gift requires donative intent, delivery, and acceptance." *In re Estate of Moskowitz*, 115 A.3d 372, 386 (Pa. Super. 2015).

In this case, Miller presented an expert witness who estimated that from the time of its sale to the date of the master's hearing, the marital home had a fair market value of $596,000.00. Miller and Orr agree that Orr's parents deliberately sold the home for substantially less than that amount. The

---

[6] The master and trial court concluded that an additional sum held in the joint marital account and used for the down payment at closing ($36,847.14) could not be traced to the sale of the pre-marital home, making it marital property. This conclusion is not in dispute.

parties' dispute centers on whether there is evidence from which the master and the trial court could conclude that Orr's parents had donative intent to sell the home for an amount less than market value solely as a benefit to their son, Orr.

At the hearing on Miller's exceptions, Orr's father testified that the reduction in price from the home's market value was *not* intended as a gift of ownership equity to Miller. That is, Orr's parents priced the house at the level they did so that it "could be afforded" and so "that the young man that grew up in the house [Orr] could have a home." Master's Hearing, 4/30/2018, at pp. 214-16. Orr's father also stressed that it was important that the home be deeded and mortgaged in his son's name alone because from his "past experience, things happen, and it's a home that he grew up at, and we wanted the home to be in his name." *Id*. at p. 215.

Based on this testimony and in combination with the fact that the marital residence was sold for less than the estimated market value, the record supports the conclusion of the master and the trial court that *any equity* in the home arising out of a price reduction was intended solely as a benefit to Orr. This finding also explains why, in some of the calculations of the master and the trial court, the total value of the marital residence was referred to as the purchase price of $495,000.00 rather than the higher market value. For the purposes of equitable distribution, any additional equity over the amount of the purchase price would be excludable as non-marital property, making it

unnecessary to identify the exact amounts of the home's market value and the reduced purchase price. Accordingly, the trial court did not abuse its discretion as to its findings regarding the valuation of the marital residence and the gift from Orr's parents through the reduced purchase price of that home.

**D.**

Miller next contends that the record does not support the trial court's finding that Orr's parents lent him and Miller $12,500.00, which both Miller and Orr were equally responsible for paying back. However, the record reflects that no such finding was made. The master and the trial court ruled that if there was a loan by Orr's parents for $12,500.00, he alone was responsible for paying that debt. *See* Trial Court Opinion, 2/3/2021, at 4. Because no error is apparent and Miller has suffered no identifiable prejudice, her claim concerning the purported loan warrants no appellate relief.[7]

**E.**

Miller's final claim is that due to the disproportionate distribution of equity in the marital residence, the trial court erred in equally dividing the remaining marital assets. However, because we have already found that the

_____

[7] The master and the trial court similarly found that to the extent Miller received a loan from her own parents, she was solely responsible for paying that sum back to them. From what can be gleaned from the record, none of the equitable distribution amounts either add or deduct any sum based on alleged loans from Miller or Orr's respective parents.

trial court did not err with respect to how the equity in the marital residence was divided, we necessarily conclude that Miller's derivative claim has no merit. Thus, the trial court's order must stand.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/19/2022