J-A12018-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| AMANDA MULLEN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| DANIEL MULLEN | : | |
| | : | |
| | : | No. 2538 EDA 2023 |

Appeal from the Order Entered September 5, 2023
In the Court of Common Pleas of Bucks County
Civil Division at No(s):  2020-61132

BEFORE:   PANELLA, P.J.E., KING, J., and STEVENS, P.J.E.*

MEMORANDUM BY KING, J.:                    **FILED SEPTEMBER 4, 2024**

Appellant, Amanda Mullen ("Wife"), appeals from the order entered in the Bucks County Court of Common Pleas, which finalized the divorce between Wife and Appellee, Daniel Mullen ("Husband"), and completed the equitable distribution of the marital property.  We affirm.

The trial court set forth the relevant facts and procedural history as follows:

> [Husband] and Wife were married on April 18, 2009. Husband and Wife separated on July 1, 2020.  Wife filed the Complaint in Divorce on July 21, 2020.  The parties attended their first master's hearing in equitable distribution of their marital estate on February 15, 2023.  That master's hearing was continued until April 28, 2023.  Wife filed a motion for a *de novo* hearing pursuant to the recommended order of the Bucks County Master's Office.  That *de novo* hearing was held on August 23, 2023.  On September 5, 2023, this

_____

* Former Justice specially assigned to the Superior Court.

[c]ourt ordered the parties' divorce and equitable distribution of their marital estate.

Husband and Wife share three minor children, ages three, seven and nine. Husband resides with the parties' children during his periods of shared physical custody in the former marital residence located in Langhorne, Pennsylvania. Wife resides with the parties' children during her periods of shared physical custody in a single-family home also located in Langhorne, Pennsylvania. At the time of the hearing, there was no custody order in place.

At the time of the hearing, Husband was employed by Norfolk Southern Railroad Police Department as a police officer. He reported a 2022 gross annual income of $80,9[5]5. At the time of the hearing, Wife was employed by Agora Charter School as a parent engagement advisor earning $80,000 gross annually. She also earns approximately $10,000 gross a year in rental income.

At the hearing there were three key points of contention between the parties. First, whether or not Husband is entitled to a vanishing credit towards the marital value of the marital residence.[1] Second, whether the increase in value of the single-family home located at 233 Mill Street, Moorestown, New Jersey (the "Moorestown property") is marital property or separate property owned solely by Wife. And third, the appropriate marital value of the Moorestown property if it was found to be marital property.

The parties are joint owners of real property located at Delaware Avenue, Langhorne, Pennsylvania. They purchased the marital residence from Husband's parents in September 2009 for $410,000. Husband's parents gifted Husband equity in the amount of $150,000. Husband's parents executed a gift letter at the time of sale. According to Husband's testimony, … the gift was made solely to him as opposed to the marriage. In support of that, only

_____

[1] As we will discuss *infra*, courts utilize the concept of a "vanishing" or "disappearing" credit where non-marital "assets were found to have been transmuted into marital property over time." ***Sergi v. Sergi***, 506 A.2d 928, 932-33 (Pa.Super. 1986).

Husband's parents and Husband signed the gift letter, as opposed to Wife also signing the gift letter. The letter states the gift was made by them solely to Husband.[2] Husband and his mother further testified that Wife was present during conversations where Husband's parents were clear on their intent to gift the equity solely to Husband, not Husband and Wife. Differently, Wife testified that no such conversation ever occurred and that she believed the gift was made by Husband's parents to her and Husband. There is a first mortgage with Capital Mortgage Services America of Texas secured by the marital residence. As of January 2023, the mortgage balance totaled $245,235. The parties agreed that the current fair market value of the marital residence is $427,500.

In January 2005, Wife purchased the Moorestown property for $130,000. Wife obtained a mortgage in the amount of $126,000 at the time of purchase. In addition, she secured a home equity loan in the approximate amount of $25,000. In July 2015, the parties refinanced so that both Husband and Wife were obligors on the Moorestown property's mortgage. At the time of the hearing, Wife's father was living in the Moorestown property and paying Wife $1,500 a month in rent. At the hearing, Husband's position was that this court should find that the Moorestown property is marital, as opposed to Wife's position that the property is entirely nonmarital. According to Husband's testimony, which we believe, the rental income generated from the property was deposited into a joint account shared by the parties. Husband also testified that he contributed time and money to the upkeep of the Moorestown property during the entire marriage. Consistent with those findings and the Divorce Code, we ordered that the increase in value of the Moorestown property from the date of marriage to the date of separation is marital property subject to equitable distribution.

Regarding the value of the Moorestown property, Husband's expert, whose report we found to be most valuable, Anthony

_____

[2] Husband offered the gift letter into evidence as an attachment to the agreement of sale for the marital residence. (*See* Husband's Hearing Exhibit H-1, submitted 8/23/23).

Salvitti, valued the property at $130,000 at the date of marriage. During Mr. Salvitti's testimony, we reviewed H—3, Salvitti Residential Appraisal Report. In preparing his appraisal Mr. Salvitti applied the sales comparison approach. He inspected the interior and exterior of the property, surveyed the surrounding neighborhood and reviewed prior transactions comparable to the Moorestown property. Mr. Salvitti considered the type of house, size, geographic location, median sales, room count, and the climate of the market to determine which transactions were comparable to the value of the Moorestown property. Mr. Salvitti specifically considered three sales that occurred in 2021 all within a few blocks of the Moorestown property. After adjusting the 2021 values to 2009 values, and in considering other relative sales, Mr. Salvitti determined that the Moorestown property had a fair market value of $130,000 as of April 2009. Wife's expert, Sean T. McCarthy, valued the property at $194,000 at the date of marriage, and $215,000 at the date of separation. During Mr. McCarthy's testimony, we reviewed W—2, his appraisal report for the Moorestown property. Mr. McCarthy conducted a market analysis which showed real estate transaction trends for the area where the property is located. He also inspected the interior and exterior of the property, considered similar properties within the same geographic span. To decide which properties were appropriate to compare to the Moorestown property, Mr. McCarthy considered the size of the property, the type of transaction which occurred, the climate of the market at that time, median sales amounts for the surrounding area, and geographic location relative to the subject property. After adjusting the values relative to the date of marriage and date of separation, Mr. McCarthy valued the Moorestown property at $194,000 at the date of marriage and $215,000 at the date of separation in 2020. This [c]ourt used Husband's expert's valuation at the date of marriage and Wife's expert's valuation at the date of separation to determine that the Moorestown property increased in value by $85,000 during the marriage.

Wife's Securities America IRA (#1847) has an agreed upon marital value of $48,374. Her Securities America ROTH IRA (#1854) has an agreed upon marital value of $6,901. Wife's Securities America Advisors IRA (#1847) has a marital

value of $42,225. Wife's Target IRA (#2854) has an agreed upon marital value of $9,290. Wife's Securities America Advisors Brokerage account (#2854) has agreed date separation value of $11,149. Wife's E-trade account has an agreed marital value of $1,729. Wife's Wells Fargo Savings account (#4883) has an agreed marital balance of $10,268. Wife's separate property and assets includes her separate interest in her PSERS pension, Securities America Advisors IRA (#1847), and any interest she may have in rental income from the Moorestown property. Wife does not have any significant separate debt. The value of Wife's retirement account, excluding the value of her PSERS is $55,275.

Husband's Norfolk Southern Vanguard Thrift Savings Plan has an agreed marital value of $156,848. Husband's First National checking account (#9058) has an agreed marital value of $863. Husband received $3,100 in net settlement proceeds after separation for an injury that occurred during marriage. Husband's separate property and assets includes any separate interest he has in his Railroad Retirement Board pension and his Norfolk Southern Vanguard TSP plan. Those accounts have an agreed upon marital value of $156,848. Husband has a Capital One credit card with an agreed upon marital balance of $6,251. Husband did not list any significant separate debt.

The parties' Joint Securities America Advisors Brokerage Account (#1862) had a date of separation balance of $7,034. The parties both represented that they exhausted the account's funds after they separated to pay joint obligations. The parties' Joint Capital One bank accounts had a date of separation balance of $5,292. The parties agree that they exhausted those funds post-separation to pay joint expenses while they continued to reside together through August 2021.

The ordered equitable distribution provided that Husband and Wife were entitled to a 50/50 split of all marital assets. After determining the marital values of the marital residence ($113,515) and Moorestown property ($85,000), agreed upon marital value of Wife's investment accounts ($9,661), agreed upon marital value of Husband's Home Depot Settlement Proceeds ($3,100), minus the balance of

Husband's Capital One Credit Card ($6,251), that Husband shall transfer $8,283 to Wife to effectuate a 50/50 distribution. To effectuate a 50/50 division of the increase in value from the date of marriage to the date of separation of the parties' retirement accounts, excluding the values of their pension plans, Wife shall receive $50,787 from Husband's TSP.

(Trial Court Opinion, filed 11/20/23, at 1-6) (record citations and footnotes omitted).

By decree and order entered September 5, 2023, the court confirmed the divorce and outlined the above-referenced equitable distribution scheme. Wife timely filed a notice of appeal on October 4, 2023. On October 10, 2023, the court ordered Wife to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Wife timely filed her Rule 1925(b) statement on October 23, 2023.

Wife now raises five issues for our review:

Whether the [trial] court abused its discretion and erred as a matter of law in finding that Husband is entitled to a vanishing credit in the amount of $68,750 for a gift of equity made to him by his parents for the purchase of the marital residence?

Whether the [trial] court abused its discretion and erred as a matter of law in valuing the Moorestown, NJ property by using Husband's fair market value at date of marriage and Wife's fair market value at date of separation to calculate the marital value of the property even though the court found Husband's expert to be credible and Wife's expert to not be credible?

Whether the [trial] court abused its discretion and erred as a matter of law in granting Husband 50% of the increase of value of the Moorestown, NJ property in equitable distribution?

- 6 -

Whether the [trial] court abused its discretion and erred as a matter of law in granting Husband 50% of the increase in value of Wife's pre-marital assets Securities America Brokerage Account #2845, Securities America IRA #1847, and Securities America ROTH IRA #1854 from the date of marriage to the date of separation in equitable distribution?

Whether the [trial] court abused its discretion and erred as a matter of law in holding that Wife is only entitled to $8,283 to effectuate 50/50 distribution?

(Wife's Brief at 15-16).[3]

The following principles apply to this Court's review of an equitable distribution order:

A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. [W]e measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this [c]ourt will not reverse those determinations so long as they are supported by the evidence. We are also

_____

[3] We have reordered Wife's issues for purposes of disposition.

aware that a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties.

***Goodwin v. Goodwin***, 244 A.3d 453, 458 (Pa.Super. 2020), *aff'd*, ___ Pa. ___, 280 A.3d 937 (2022) (internal citations and quotation marks omitted).

In her first issue, Wife emphasizes that the application of a vanishing credit during equitable distribution "is not codified into Pennsylvania law." (Wife's Brief at 23) (emphasis omitted). Wife acknowledges prior appellate decisions that mention the use of vanishing credits. Wife asserts, however, that "none of these cases discuss whether vanishing credit is a proper method of enforcing the codified laws of equitable distribution." (***Id.*** at 25). Wife argues that the trial court should not have used a vanishing credit here because the Pennsylvania legislature has already "provided a set of rules for assisting courts in determining equitable distribution," which is set forth in Section 3502 of the Domestic Relations Code. (***Id.*** at 27). Wife claims that "using formulas such as vanishing credit robs parties of their opportunity for a complete review of the facts and circumstances presented," and she asks this Court to "bar the use of vanishing credit." (***Id.*** at 27-28, 29).

Wife adds that "Husband received a gift of equity [from his parents] to purchase the marital residence." (***Id.*** at 29). Wife contends that this gift "transformed into marital property" because Husband used it to purchase the marital residence, which was a marital asset. (***Id.*** at 30). Wife posits that

the parties clearly intended to treat the entirety of the marital residence, including the gift of equity, as marital property. Wife concludes that the court abused its discretion by awarding the vanishing credit to Husband. We disagree.

The Domestic Relations Code governs the equitable distribution of marital property as follows:

**§ 3502. Equitable division of marital property**

**(a) General rule.**—Upon the request of either party in an action for divorce or annulment, the court shall equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such percentages and in such manner as the court deems just after considering all relevant factors. The court may consider each marital asset or group of assets independently and apply a different percentage to each marital asset or group of assets. Factors which are relevant to the equitable division of marital property include the following:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7)     The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8)     The value of the property set apart to each party.

(9)     The standard of living of the parties established during the marriage.

(10)     The economic circumstances of each party at the time the division of property is to become effective.

(10.1)     The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

(10.2)     The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11)     Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S.A. § 3502(a).

"The determination of whether an asset is part of the marital estate is a matter within the sound discretion of the trial court." ***Tagnani v. Tagnani***, 654 A.2d 1136, 1138 (Pa.Super. 1995). "Generally, property acquired during the marriage by bequest, devise, or descent is non-marital property." ***Verholek v. Verholek***, 741 A.2d 792, 797 (Pa.Super. 1999) (*en banc*), *appeal denied*, 563 Pa. 665, 759 A.2d 388 (2000). "However, once non-marital property is combined and co-mingled with marital property, it loses its identity as non-marital property and takes on the status of marital property."

*Id.* "A gift to a spouse remains the property of that spouse unless he or she manifests an intention to donate it to the entireties entity." ***Campbell v. Campbell***, 516 A.2d 363, 367 (Pa.Super. 1986), *appeal denied*, 515 Pa. 598, 528 A.2d 955 (1987).

Regarding the concept of a vanishing credit, the trial court referenced the decision in ***Sergi, supra***. There, the trial court held an equitable distribution hearing. The court determined that the parties' joint bank account, totaling $13,000.00, had become a marital asset even though the account included premarital cash. The court observed that the husband's premarital savings account contained $9,557.48, and the wife's premarital savings account contained $4,056.32. "These cash assets were found to have been transmuted into marital property over time." ***Sergi, supra*** at 932-33.

The court, however, opted to give the parties credit for this non-marital cash as follows:

> It has been my approach, where we have definable premarital cash and where the marriage has not been of a long duration, to give some credit to the respective parties for these premarital cash assets, but not necessarily the entire amount.
>
> I look upon these credits as being more or less a disappearing credit, depending upon the length of the marriage. If the parties have been married a long time, perhaps there is no credit whatsoever. But in this case, the parties had been married five and a half years, and I feel that they are each entitled to some credit for their premarital cash.

*Id.* at 933.

- 11 -

On appeal, the husband disagreed with the court's ruling regarding the amount of non-marital cash that the wife had contributed to the joint bank account. This Court determined that the husband was not entitled to relief and, in so doing, tacitly approved the trial court's utilization of the vanishing credit:

> While [the husband] argues that [the wife] only contributed $2,000 in cash and $2,000 went for the car she left the marriage with, testimony on this point was contested. [The wife] testified her premarital cash consisted of $4,000 and was blended into the joint account after marriage. While [the husband] may disagree with [the wife] as to the amount of premarital cash she contributed to their joint account the court did not abuse its discretion in apparently believing [the wife's] version of the facts. In reviewing the trial court's determination, we must keep in mind that the court was free to accept or reject the parties' testimony. **Having determined that the premarital cash had been transmuted into marital property, the court was under no obligation to return the full value of the premarital cash to the parties prior to working an equitable distribution.**

*Id.* (internal citations and quotation marks omitted) (emphasis added). Later, this Court added:

> We note that there is no simple formula by which to divide marital property. The method of distribution derives from the facts of the individual case. The list of factors [in the Divorce Code[4]] serves as a guideline for consideration, although the list is neither exhaustive nor specific as to the weight to be given the various factors. Thus, the court has flexibility of method and concomitantly assumes responsibility in rendering its decisions.

_____

[4] ***Sergi*** cited to the statutory provisions of the Divorce Code of 1980, 23 P.S. § 101 *et seq.*, which served as a precursor for many of the provisions found in the current Domestic Relations Code.

- 12 -

> While another court may choose to give different weight to the factors of [the Divorce Code], it is apparent that the trial court considered these factors in its determination. Since the record fails to reflect an abuse of discretion on the part of the trial court, its decision must stand with respect to the weight accorded the factors of [the Divorce Code].

*Id.* at 934 (internal citation omitted).

Instantly, the trial court cited to *Sergi* and other cases to support the use of a vanishing credit in conjunction with the gift of equity made to Husband:

> It is true that once non-marital property is combined and comingled with marital property, it loses its status as non-marital property and converts to marital property. It is undisputed that Husband received a gift of equity to purchase the marital home, and that the marital home is a marital asset. However, trial courts are given broad discretion in making equitable distribution determinations of marital assets, and it is well within the trial court's discretion to credit marital expenses. Which is why the Superior Court has held that the "vanishing credit doctrine" can be applied when formulating its order, especially when it is based on the Master's recommendations.[5] Therefore, because the credit was consistent with the Superior Court's application, Bucks County policy and the Master's Report, this court did not abuse its discretion and correctly ordered that Husband should receive $68,750.00 credit for the gift of equity from his parents, held jointly for 10 years and 10 months.

(Trial Court Opinion, filed 11/20/23, at 12-13) (internal citations omitted).

---

[5] In addressing the marital residence, the Master "averaged the parties' appraisals and finds the fair market value to be $427,500. The fair market value ($427,500), less the mortgage balance ($245,235), less the vanishing credit ($68,750), results in $113,515 of marital equity available for distribution." (Report of the Master, filed 5/3/23, at 4).

- 13 -

Here, we cannot say that the court erred in its use of the vanishing credit. Just as this Court noted in **Sergi**, there is no simple formula for the division of marital property, and trial courts must retain flexibility in the methods they employ when crafting equitable distribution orders. The court relied on the gift letter from Husband's parents to find that the gift of equity was Husband's non-marital property, and we decline to characterize this decision as an abuse of discretion under these circumstances. **See Goodwin, supra**; **Campbell, supra**.

Additionally, we push back on Wife's attempt to characterize the vanishing credit as a "formula" that "robs" parties of an opportunity for a complete review of the unique facts of their cases. To the contrary, the court used the vanishing credit to comply with the mandates of Section 3502(a). Significantly, this section requires a court to examine the contribution of a party in the acquisition of marital property.[6] **See** 23 Pa.C.S.A. § 3502(a)(7). In this case, the court was forced to reckon with a scenario where Husband's non-marital property (the gift of equity) contributed to the acquisition of marital property (the marital residence). To the extent the court utilized a vanishing credit as a means of effectuating economic justice between the parties under these circumstances, we believe that the court complied with the Domestic Relations Code and did not commit reversible error. **See**

---

[6] Indeed, the Master's report discussed the gift of equity in the "Contributions, dissipations" section. (Report of the Master at 2).

***Goodwin, supra***.  Accordingly, Wife is not entitled to relief on her first issue.

In her second issue, Wife argues that the court improperly calculated the increase in value of the Moorestown property by using Husband's expert's date of marriage value and Wife's expert's date of separation value.  Wife asserts that the use of these valuations maximized the property's increase in value, thereby increasing the amount of the equitable distribution award for Husband.  Wife cites 23 Pa.C.S.A. § 3501(a.1) for the proposition that courts measure an increase in value "from the date of marriage … to either the date of final separation or the date as close to the hearing on equitable distribution as possible, whichever date results in a lesser increase."  Wife adds that the court purportedly "found Husband's expert report more valuable," and the court "should be bound by its credibility determinations."  (Wife's Brief at 44).  Wife insists that the court's decision to use valuations from both experts is further evidence of the court's bias against Wife.  Based upon the foregoing, Wife concludes that the court abused its discretion.  We disagree.

Pursuant to the Domestic Relations Code, the increase in value of nonmarital property is measured as follows:

> The increase in value of any nonmarital property acquired pursuant to subsection (a)(1) and (3) shall be measured from the date of marriage or later acquisition date to either the date of final separation or the date as close to the hearing on equitable distribution as possible, whichever date results in a lesser increase.

23 Pa.C.S. § 3501(a.1).

We reiterate that "it is within the province of the trial court to weigh the

evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence." ***Childress v. Bogosian***, 12 A.3d 448, 455 (Pa.Super. 2011).

> The Divorce Code does not specify a particular method of valuing assets. Thus, the trial court must exercise discretion and rely on the estimates, inventories, records of purchase prices, and appraisals submitted by both parties. **When determining the value of marital property, the court is free to accept all, part or none of the evidence as to the true and correct value of the property.** Where the evidence offered by one party is uncontradicted, the court may adopt this value even though the resulting valuation would have been different if more accurate and complete evidence had been presented. A trial court does not abuse its discretion in adopting the only valuation submitted by the parties.

***Id.*** at 456 (internal citations and quotation marks omitted) (emphasis added). "Additionally, the court may reject evidence offered by both parties in favor of its own valuation method." ***Verholek, supra*** at 796.

Instantly, Husband's expert valued the Moorestown property at $130,000 at the time of the parties' marriage and $192,000 in July 2021, which was one year after the parties separated. (***See*** N.T. Hearing, 8/23/23, at 60). Husband's expert did not provide a valuation for the property at the date of separation. Wife's expert valued the Moorestown property at $194,000 at the time of the marriage and $215,000 at the date of separation. (***Id.*** at 103, 116). Wife's expert did not provide a valuation for any date after the separation. At the conclusion of the hearing, the court made its credibility determinations and adopted Husband's expert's date of marriage value and

Wife's expert's date of separation value, which resulted in an increase in value of $85,000. (**Id.** at 236).

Although Wife relies on Section 3501(a.1) for the proposition that the court should have utilized Husband's expert's July 2021 valuation, the court was free to reject this evidence. **See Childress, supra**. To the extent Wife suggests that the court was bound to accept all or none of an expert's valuations, this assertion ignores the well-established principle that a court may accept all, part, or none of the evidence presented. **Id.** Ultimately, the court relied on estimates and appraisals supplied by the parties in determining the value of the Moorestown property, and we decline to interfere with its credibility determinations in this regard. **See Goodwin, supra**.

In her third, fourth, and fifth issues, Wife argues that the court did not engage in a meaningful analysis of the equitable distribution factors, especially in distributing the increase in value of the Moorestown property and Wife's various investment accounts. Wife avers that Section 3502(a)(7) and (8) (the contribution/dissipation of each party in the acquisition of marital property and the value of the property set apart to each party) weigh heavily in her favor. Wife acknowledges that the court has broad discretion in evaluating the Section 3502 factors. Nevertheless, Wife asserts that the court abused its discretion because it evaluated the factors in a biased manner. Wife concludes that this Court must overturn the court's the equitable distribution order. We disagree.

"In the context of an equitable distribution of marital property, a trial court has the authority to divide the award as the equities presented in the particular case may require." **Schenk v. Schenk**, 880 A.2d 633, 639 (Pa.Super. 2005). "[E]quitable distribution does not presume an equal division of marital property and the goal of economic justice will often dictate otherwise…. We look at the distribution as a whole, in light of a trial court's overall application of the factors enumerated at [Section] 3502(a)[.]" **Id.** (quoting **Mercatell v. Mercatell**, 854 A.2d 609, 612 (Pa.Super. 2004)).

Instantly, the court provided a detailed analysis of each of the Section 3502(a) factors. (**See** Trial Court Opinion at 16-20). After weighing the factors, the court found that ten (10) of factors weighed neutrally on both parties, thereby favoring a 50/50 distribution.[7] (**See id.** at 16). The court's opinion confirms that it engaged in a thoughtful analysis of the relevant statutory factors for fashioning an equitable distribution award. **See Schenk, supra**. We cannot say that the court committed an abuse of discretion, especially where the 50/50 split comported with the Master's original

_____

[7] The court found that Section 3502(a)(3), the age/health/station/amount and sources of income/vocational skills/employability/estate/liabilities/needs of each of the parties, weighed in favor of Husband. Specifically, "Wife is younger, has achieved a much higher level of education, and earns approximately $10,000 more annually than Husband." (Trial Court Opinion at 16). Nevertheless, the court's weighing of this factor in Husband's favor was not enough to convince it that something other than a 50/50 distribution scheme was warranted.

recommendation.[8] *See Goodwin, supra*. *See also Schultz v. Schultz*, 184 A.3d 168 (Pa.Super. 2018) (finding no indication that trial court improperly presumed 50/50 split; rather, court carefully examined appropriate factors under Section 3502(a) and set forth reasons for distribution as directed by Section 3506). Accordingly, Wife is not entitled to relief on her final three claims, and we affirm the equitable distribution order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/04/2024

---

[8] In the "Recommendation and Discussion" section of the Master's report, the Master valued the marital estate at $441,208.00 and recommended that the court "[d]istribute the above assets equally[.]" (Report of the Master at 8).